### MELLVILLE B. PARKER AND CHARLOTTE WHEELER, PROSECUTORS, v. BOROUGH OF POINT PLEASANT AND HARVEY R. BILLS AND FLORA A. BILLS, RESPONDENTS.

Decided July 10, 1933.

Before Justice PERSKIE, sitting alone.

For the prosecutors, *Peter Bentley.*

For the respondents, *Howard Ewart.*

PERSKIE, J.   Mellville B. Parker, prosecutor, and Charlotte Wheeler, prosecutrix (who shall be hereafter referred to as prosecutors), are the owners of summer homes in the borough of Point Pleasant, Ocean county.  These properties are more particularly located on the west and east side, respectively, of the property owned by the respondents (who shall be hereafter referred to as Bills).  The three properties front the south side of the Manasquan river.  The property of Bills is known as "Clark's Landing" and has been used as a popular picnic ground and amusement center for upwards of fifty years, and for a long time prior to the ac-

quisition by either prosecutors of their respective premises. The Bills own the riparian lands under the waters of the Manasquan river abutting their premises. They concluded to make the following improvements thereto:

"The construction in the Manasquan river of a double yacht basin, divided by pile and timber pier and walkway, enclosed on three sides by a similar pier and walkway, to which is added facing of timber and sheathing extending from the level of the walkway on the top of the pier to a line two feet above the river bottom, and also making of solid fill for a distance of fifty feet, and the laying of a rip-rap bulkhead for protection along the edges of the fill."

Whereupon on November 17th, 1931, they made application for a permit for said undertaking to the state board of commerce and navigation. On November 26th, 1931, the said board in pursuance to chapter 123 of the laws of 1914, granted the permit. This permit remained in force by its terms for one year of this date. Nothing having been done under the said permit within the year, they made application for a renewal of the permit and on January 25th, 1933, the same was granted. The work authorized thereunder was as follows:

"Construction of two pile and timber yacht basins and making of a solid fill, with rip-rap protection on lands under waters of Manasquan river, south shore, about one-half mile east of the Bay Head-Manasquan canal, in the borough of Point Pleasant, and county of Ocean, granted by the State of New Jersey to Roderick A. Clark, December 26th, 1895, as shown on a plan dated November, 1931, and filed with the board of commerce and navigation November 18th, 1931."

The war department of the United States of America likewise gave its permit for this undertaking on March 17th, 1933, which, by its terms, continued to be effective up and until December 31st, 1936.

The action of the borough of Point Pleasant in the premises is set forth in the resolution adopted by it on February 2d, 1933, and is in the following form:

On February 2d, 1933, the council adopted its final resolution which reads as follows:

"Councilman Devoe offered the following resolution and moved its adoption:

Whereas, on February 15th, 1932, Harvey R. Bills did present to the borough council a plan, showing specifications and dimensions concerning a proposed extensive development of his riparian lands on and under the Manasquan river, including a boat basin, said basin being so designed as to protect boats from the severe action of storms; and

Whereas on the date aforesaid council did waive its objections to the said project; and

Whereas on February 29th, 1932, council did rescind its action of February 15th, 1932; and

Whereas, because of objections to the fact that sheathing covering a part of the boat basin was shown on the original plan as extending to the river bottom; and

Whereas, the said Harvey R. Bills has revised his plans to the extent that sheathing shall extend downward to approximately low water level, thus allowing an unobstructed flow of tides; and

Whereas, it has been the desire of council to observe to a proper degree the desires of adjoining property owners and to permit nothing which might embarass the department of commerce and navigation of the State of New Jersey or the war department of the federal government in the establishment of the harbor lines in the Manasquan river; and

Whereas, on January 28th, 1933, at Manasquan, New Jersey, there was held a hearing by the war department on (1st) the desirability, advisability or necessity of establishing of harbor lines and (2d) the advisability and propriety of establishing the lines for solid fill and also for pierheads on lines substantially as proposed and submitted by the Manasquan River Protective Association; and

Whereas, on the date last aforesaid W. J. Wheeler and M. B. Parker, property owners adjoining the said Harvey R. Bills, did have the opportunity of making their views known on the matter of establishment of harbor lines, of solid fill and pierhead;

Now therefore be is resolved, that this council, having great confidence in the department of commerce and navigation and in the war department to keep within their approved bounds and all development of riparian lands on the Manasquan river, does hereby waive its objections to the proposed development of Harvey R. Bills.

Be it further resolved, that two certified copies of this resolution be tendered to the department of commerce and navigation."

Prior to the issuance of the aforesaid permits by the state board of commerce and navigation and the war department, two hearings were conducted on the subject, one at Point Pleasant on February 13th, 1932, and the other hearing at Manasquan, New Jersey, on or about January 28th, 1933, at which latter hearing Mellville B. Parker attended. In addition thereto several hearings were held by the governing body of the borough of Point Pleasant at one or more of which Mellville B. Parker was present and was heard with respect to the proposed improvements and to the waiver by the borough of any objection to the making of the said improvements.

Work was commenced on the improvements about April 1st, 1933; between $2,400 and $2,500 has been expended and same was about eighty per cent. completed before the prosecutors sought the aid of the court on May 20th, 1933.

The application of the prosecutors for this writ is based on the following grounds:

1. No written application was made to the borough.

2. That no legal notice was given of the hearing before the borough council; and

3. That the borough never issued to Bills a permit or license for the improvement in question.

These objections are predicated on the requirements of sections 1, 3 and 4 of article 28, chapter 152, laws of 1917, page 420. It is conceded that there has been no compliance with the aforesaid provisions. The answer is made that there is nothing in the provisions of the Home Rule act aforesaid which compels a municipality to assume jurisdiction of this type of an improvement to the water front within said

municipality; that since the borough never adopted a regulatory ordinance provided in the Home Rule act aforesaid, that it never acquired jurisdiction over the subject-matter and therefore there was no need on the part of the respondents to comply therewith; that the permits of the war department and that of the state board of commerce and navigation are all that is necessary for the making of the improvements here challenged. Suffice it to point out that if the contention of the prosecutors is sound in this respect, then a municipality by inaction, *i. e.,* not adopting a regulatory ordinance on the subject, could deprive a property owner of the lawful use and enjoyment of his property. But assuming for the purpose of illustration that the Home Rule act aforesaid is applicable, there still appears to me to be two unanswerable objections thereunder to the allowance of the writ. First: Section 4 of article 28, of the Home Rule act, *inter alia,* provides that any improvement made in navigable waters, as herein contemplated, without a license of the municipality, &c., shall be deemed a nuisance; that the persons erecting same shall be guilty of a misdemeanor punishable by fine or imprisonment, &c., and that if the nuisance shall be in existence at the time of conviction and sentence, it shall be lawful for the court, in its discretion, to direct either the defendant or the sheriff of the county at the expense of the defendant, to abate the same.

Our court has held that where there is another remedy by indictment or civil action the allowance of a writ of *certiorari* should be denied. *Oliver* v. *Jersey City,* 63 *N. J. L.* 99; 42 *Atl. Rep.* 782; *Millville* v. *Board of Education,* 100 *N. J. Eq.* 162; 134 *Atl. Rep.* 748; *affirmed,* 101 *N. J. Eq.* 303; 137 *Atl. Rep.* 916.

Second: Section 6 of article 28 of the Home Rule act gives a person aggrieved by any decision of the governing body, either granting or refusing to grant in whole or in part a license to erect, &c., an improvement as herein contemplated, the right thirty days after the determination to present a petition to the Common Pleas Court, who, upon due notice to all interested, shall conduct a hearing and shall

make such order in the premises as it may think the governing body should have made and said order shall be final and conclusive. This the prosecutors did not do.

It is likewise clear that at the time this application was made respondents had already expended between $2,400 and $2,500 and that the undertaking was about eighty per cent. completed. While there is no hard and fixed rule that can be laid down for a guidance on the subject-matter of laches, nevertheless, when one seeks to invoke the discretion of the court to grant the extraordinary writ of *certiorari*, he must prosecute his claim with due diligence. To permit the respondents to expend the money they did and practically complete the undertaking, to the extent of eighty per cent.—before seeking relief—is not a diligent prosecution of one's rights. The prosecutors are guilty of laches. *Loomis* v. *Union City*, 6 *N. J. Mis. R.* 330; 142 *Atl. Rep.* 170.

What would the granting of a writ of *certiorari* accomplish from a practical standpoint? The answer is obvious. It would accomplish nothing. The undertaking is practically completed. The setting aside of the resolution adopted by the borough council on February 2d, 1933, would mean nothing. Where the allowance of a writ of *certiorari* will accomplish nothing, it should be denied. *Riddle* v. *Commissioner of Banking and Insurance*, 100 *Atl. Rep.* 692.

I have carefully considered all the facts, exhibits, permits, a photo of the improvements and all the circumstances, and fail to find any merit in the application. The application for a writ of *certiorari*, or a rule to show cause, must therefore be refused, with costs.