AMELIA V. MATTHEWS AND MARY A. HALL, PROSECUTORS, v. CITY OF ASBURY PARK, ROLAND H. LOOG, CLERK OF SAID CITY, AND JOHN JACOBS, RESPONDENTS.

AMELIA V. MATTHEWS AND MARY A. HALL, PROSECUTORS, v. CITY OF ASBURY PARK, ROLAND H. LOOG, CLERK OF SAID CITY, AND SAMUEL BRODY, RESPONDENTS.

Argued July 18, 1934—Decided July 30, 1934.

Before Justice PERSKIE, at chambers, pursuant to statute.

For the prosecutors, *Hobart & Minard.*

For the respondents, *John Milton.*

PERSKIE, J. *Pamph. L.* 1933, *ch.* 436, *p.* 1180, as amended by *Pamph. L.* 1934, *ch.* 85, *p.* 218, provides:

"Every applicant for a license shall cause a notice of intention to make such application to be published in a form prescribed by rules and regulations, once a week for two weeks successively in a newspaer, printed in the English language, published and circulated in the municipality in which the licensed premises are located  *  *  *." .

In pursuance to the aforesaid advertisement, the city of Asbury Park, operating under the Municipal Manager act, did, on July 3d, 1934, issue a liquor license to Samuel Brody, at N. W. corner Third and Ocean avenues, and to John

Jacobs, at S. W. corner Second and Ocean avenues, both in Asbury Park, by a vote of two to one (notation of minutes of said meeting: "Mayor Dennis and Councilman Groce not eligible to vote"). Neither prosecutrices, nor any one else appears to have made any objection thereto either to the issuing body, *i. e.*, the city of Asbury Park, or the commissioner of the state department of alcoholic beverage control.

There is no claim that the licenses were obtained by fraud or deceit. *Freeman* v. *Hague*, 106 *N. J. L.* 137.

But, it does appear, and it is not contraverted, in the case of John Jacobs, that he has been in business at the given address for over ten years. He employes fifty-one people and ten extras over the week ends, and has a weekly payroll of over $700. He has expended more than $10,000 in furnishing his beer garden, and has recently signed a lease for four years at a rental for the period of $10,750.

That the respondent, Brody, conducts a restaurant and bar at the given address, and has been in business at that location for over sixteen years. He employes twenty people and has a pay-roll of $427.50 weekly. He has expended more than $18,000 in furnishing his beer garden, and occupies the premises under a four-year lease calling for a rental of $4,000, plus ten per cent. of the gross receipts of the business over $40,000.

In the Jacobs case the premises of the prosecutrix, Amelia V. Matthews, is located three and one-half blocks from his premises; the premises of the prosecutrix, Mary A. Hall, is located five and one-half blocks from his premises. In the Brody case it appears that the Matthews premises is located four and one-half blocks from his premises and that the Hall premises is located six and one-half blocks therefrom. In the territory between the premises of the prosecutrices and that of the respondents there are five other places selling alcoholic beverages at no greater distance from the premises of the prosecutrices.

It was not until July 16th, 1934, that notice was given of an application before me for a writ of *certiorari* to review

the issuing of the aforesaid licenses, returnable July 18th, 1934.

The argument is made that the granting of the licenses, as aforesaid, were illegal solely by reason of the two to one vote. I am not concerned on this application with the disqualification of Dennis and Groce.

Prosecutrices, in their brief, concede that section 711 of the Municipal Manager act, and section 3 of the Commission Government act, as amended by *Pamph. L.* 1916, *ch.* 193, *p.* 406, are substantially the same with regard to the number of councilmen necessary to constitute a quorum, and the requirement that an affirmative vote of a majority of all the members shall be necessary to take any action or pass any measure. In the case of *Housman* v. *Earle,* 98 *N. J. L.* 379, the common law rule, by reason of an absence of statutory provisions, was followed; namely, that a majority of the quorum was all that was necessary. It is argued that the effect of this holding is not adverse to the facts of the instant case. For, it is pointed out that in the Houseman *v.* Earle case the subject-matter involved was an election and not a resolution, and in the Managerial act it is definitely provided that "the affirmative vote of members shall be necessary to take any action or pass any measure."

To this argument answer is made that section 711 (*Pamph. L.* 1923, *p.* 227) of the City Manager act was, by implication, repealed by the Home Rule act as amended *Pamph. L.* 1926, *p.* 378; that section 711 has no application to the issuance of a license by the issuing authority under the Control act; that the provisions of the Control act are exclusive. That when the councilmen issued the license they did so by virtue of the provisions of the Control act, under which they were constituted as the issuing authority; that since the Control act does not prescribe how many in number of the issuing authority shall constitute a quorum and since it does not prescribe how many votes shall be necessary to issue a license, therefore, the common law rule, as announced in *Housman* v. *Earle, supra,* is applicable. And that prosecutrices have not exhausted the appellate provisions of the Control act.

Quite frankly, under ordinary circumstances, I would be inclined to grant the writ in order to definitely determine the debatable questions thus presented. But the circumstances of the instant case are extraordinary. They impel me to exercise my discretionary powers in the premises against the granting of the writ.

Asbury Park is a seashore resort. The merchants of such a city depend largely upon the seasonable period of the year, particularly the summer season, for the bulk of their business. Each respondent, like others located in the neighborhood lying between their places of business and that of the prosecutrices, obtained, on notice and without fraud or deceit, a license to sell liquor. They entered into substantial leases; made extensive and costly improvements; employ quite a few help and operate what appears to be, after a personal inspection of the neighborhood and the general appearance of their business, modern places of that character for the supplying of food and drink. During all this time the prosecutrices sat by and did nothing to voice their disapproval or objection until this late day; almost at the peak of the season.

And there is force and merit to the contention that prosecutrices have not exhausted the appellate provisions of the Control act. *Florenzie* v. *East Orange*, 88 *N. J. L.* 438.

"More or less to the same effect are *Appelget* v. *Pownell*, 49 *N. J. L.* 169; *Hall* v. *Snedeker*, 42 *Id.* 76; *Young* v. *Parker*, 34 *Id.* 49."

"The judicial policy of exhausting statutory tribunals is also illustrated in the case of controversies arising under the School law. *Jefferson* v. *Board of Education*, 64 *N. J. L.* 59; *Draper* v. *Commissioner of Public Instruction*, 66 *Id.* 54; *Montclair* v. *Baxter*, 76 *Id.* 68."

"The doctrine of the general availability of the court's prerogative writ, when no other remedy exists, has no application in cases when the legislature has provided a specific remedy and a special agency for its prompt administration. It is a sound exercise of discretion, to say the least, for the courts to forward rather than to thwart such legislative

policy, and this can be done only by denying *allocatur* where the statutory review has not been had, reserving the use of the prerogative writ for the review of such statutory tribunals, rather than permitting its use to their disparagement."

"The discretionary nature of the writ permits, if it does not require, us to give controlling effect to these considerations." *Florenzie* v. *East Orange, supra*.

Our legislature has evidenced a definite state wide policy for the control of the liquor problem. The stabilization of the many phases incident to that problem, both of a substantive and procedural character, are in the making. The state authorities should be given every reasonable opportunity to work out the mandate of the legislature.

My study of all the facts and circumstances of the instant application, as well as the law applicable thereto, leads me to the conclusion, for the reasons already indicated, particularly laches, that the writ of *certiorari* should be denied. *Freeman* v. *Hague, supra; Parker et al.* v. *Borough of Point Pleasant et al.*, 11 *N. J. Mis. R.* 535; 167 *Atl. Rep.* 217.

The writ of *certiorari* is denied, with costs.