28 N.J. Super. 483 (1953)
101 A.2d 102
WALTER H. JONES AND ALICE HENSHAW JONES, PLAINTIFFS,
v.
THE ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF LONG BEACH, THE BOARD OF COMMISSIONERS OF THE TOWNSHIP OF LONG BEACH, THE TOWNSHIP OF LONG BEACH, JULIA EDNA FRAZIER, CLAUDE W. TAYLOR, EDNA M. TAYLOR, S. ROBERT LASLOCKY, AURELIA A. LASLOCKY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 25, 1953.
*484 Mr. Walter H. Jones, pro se and for plaintiff Alice Henshaw Jones.
Messrs. Berry, Whitson & Berry (Mr. Franklin H. Berry), for the Zoning Board of Adjustment of the Township of Long Beach, the board of commissioners of the Township of Long Beach, Julia Edna Frazier, Claude W. Taylor and Edna M. Taylor, defendants.
*485 Mr. Louis B. LeDuc, for S. Robert Laslocky and Aurelia A. Laslocky, defendants.
WILLIAM A. SMITH, A.J.S.C.
This is an action in lieu of prerogative writ in reference to zoning and involves the determination of the action on the second count. The first count has been disposed of by a previous determination by the court. The counts were not, insofar as causes of action and specific property are concerned, related, except that they are brought by the same plaintiffs property owners and against the defendant Township of Long Beach. The defending property owners are different and the causes of action are not the same.
Long Beach Island is a long, narrow island running from Barnegat Inlet to Beach Haven Inlet and is bounded on the east by the Atlantic Ocean and on the west by Barnegat Bay. The entire island was originally governed by the Township of Long Beach, but as the properties on the island had been developed separate municipalities have been carved out of the Township of Long Beach, leaving separated sections or segments of land still governed by the defendant township. One of these sections is known as Loveladies, which lies just south of the Borough of Barnegat Light and north of the Borough of Harvey Cedars; it contains about 1,000 acres and is about two miles long. It is more or less in its native state as far as development is concerned, with the exception that the boulevard extends through it from north to south. The section is practically entirely zoned for residential purposes and the particular section which we are dealing with has only 34 residences erected before 1950 and 31 more since that time.
The property of the plaintiffs is located on the east side of the boulevard and runs through to the Atlantic Ocean. The property of the defendants Laslocky is directly opposite that of the plaintiffs and fronts on the west side of the boulevard, extending back well over 400 feet.
The first cause of action had to do with property belonging to the defendants Taylor, which was within 100 feet of *486 the plaintiffs' property and separated only by a narrow street; it was formerly the Coast Guard Station and was converted to residential purposes. The action was brought to set aside a variance granted to the Taylors for business purposes and the proceedings were set aside and judgment entered for the plaintiffs, resulting in its continuance in residential status.
The second cause of action involves the validity of an amendment to the zoning ordinance. The plaintiffs as property owners ask that an amendment to the zoning ordinance be declared invalid. The original zoning ordinance was passed June 3, 1949, and except for the property of the Long Beach Foundation the entire section was zoned for residential purposes, excepting for provisions for churches, parish houses, schools, public libraries, public museums, art galleries and telephone exchanges. On May 9, 1950, an ordinance known as Number 174 (Exhibit P-4) was published, which was an ordinance amending the zone; it was again published on May 16, 1950, and was finally passed on May 19, 1950. The amendment carved out a piece of property fronting on the west side of the boulevard opposite the plaintiffs' property, consisting of the property of the Long Beach Foundation, with a frontage of 806 feet, next to a lot owned by the defendants Laslocky, having a frontage of 125 feet, and a piece of property adjoining the Laslocky's property on the south, having a frontage of approximately 500 feet. This last piece of property was owned by the Township of Long Beach. All of the property contained in the amendment had a depth of 400 feet and by the amendment was made into a business zone. It consisted of a frontage of 1,250 feet and contained approximately 11.2 acres. The amendment to the zoning ordinance was authorized by the statute, N.J.S.A. 40:55-35, which provides in part as follows:
"In case of a protest against such proposed change signed by the owners of twenty per centum (20%) or more either of the area of the lots or land included in such proposed change, or of the lots or land in the rear thereof extending one hundred feet *487 therefrom, or of the lots or land on either side thereof or directly opposite thereto extending one hundred feet therefrom (exclusive of street space), such change shall not become effective except by the favorable vote of two-thirds of all the members of the governing body or board of public works of such municipality." As amended L. 1948, c. 305, p. 1222, sec. 4.
The provisions of this section were not invoked against the passage of the amending ordinance. The plaintiff husband in this action says that he did not know of the passage of the amending ordinance until July 1950, about two months after its passage. The Laslockys, on the passage of the ordinance, commenced the construction of a commercial building which was completed in August 1950, and opened as a milk bar serving refreshments and selling products to be carried out; since its opening it has continued to operate as a milk bar. The plaintiff admits that he knew in July of the construction of the building referred to, when it was about three-fourths completed, but says he thought it was a residence. On July 18, 1952, approximately two years after the plaintiff knew of the passage of the amending ordinance, the plaintiffs instituted this action, alleging that the amending ordinance was an example of spot zoning and was, therefore, illegal and invalid.
There can be no question but that one of the motivating causes of the passage of the amending ordinance was the desire on the part of the Long Beach Foundation to have a nearby place where light refreshments could be served. Dr. Blai, the head of that institution, contended that the milk bar was a necessity to the institution and, undoubtedly, he interested the Laslockys in the construction of the milk bar which was completed in August, 1950. The defendants Laslocky both testified that they first knew of the plaintiffs' objection to the ordinance, the erection of the building and conducting the business, on the starting of this suit. The mayor of the township testified and claimed that the passage of the amended ordinance was motivated by a desire to create a business zone for the Loveladies section as there was no business zone in the general neighborhood. He also testified *488 that the representative of the property holders association had approved of the idea.
The defenses set up on behalf of the defendants to the second count, in addition to the denial that the ordinance was illegal as being spot zoning, are estoppel and laches, the laches being the failure to bring the action for about two years and then only when the accrual of the cause of action under the first count occurred. The grounds of estoppel set up are the plaintiffs' standing by without opposition for two years while the defendants Laslocky erected the building, furnished it and conducted a thriving business, creating a material good will.
By consent, data pertaining to the finances in regard to the erection and operation of the milk bar were admitted in evidence (Exhibit DL-2), and these show a capital investment for the real estate of $25,873.36, the installation of equipment at a cost of $11,782.30, and sales for the period from the opening of the milk bar in 1950 until August 31, 1953, of $37,017.39. The sales for 1950 were $1,665.89 and increased each year so that the sales for 1953 up to August 31, 1953, were $12,959.13.
The relief the plaintiffs seek here in an action in lieu of prerogative writ is that which, previous to the establishment of the practice under the new Constitution, would have been sought by writ of certiorari. Under the new rules, the right to institute an action such as this is by right but where relief was formerly sought by writ of certiorari the allowance of the writ was discretionary, and the fact that the plaintiffs have the right to bring the suit does not change the fact that the relief that they may obtain is discretionary with the court and may be refused where it appears that the public interest will suffer or private injustice will be done, and the court may exercise a liberal discretion and equitable interests will be considered in guiding the court in the exercise of its discretion. There are many authorities to support this statement but they are clearly stated in the case of Daniel B. Frazier Co. v. Borough of Harvey Cedars, 111 N.J.L. 163, 168 A. 128 (Sup. Ct. 1933). Although *489 that case is not factually in point, it is a clear statement governing the court's consideration of an issue of the kind with which we are dealing.
Although there was no specific limitation laid down by our rules at the time this action was commenced as to the time in which an action of this character might be instituted, there is authority that relief may be denied where the plaintiff is guilty of laches by delay. In re Musicians' Protective Union, Local 526, 137 N.J.L. 93, 58 A.2d 266 (Sup. Ct. 1948). Since the institution of this action, however, the Supreme Court has amended the rules of the Superior Court, and by R.R. 4:88-15 it is now provided:
"(a) No proceedings for review, hearing and relief in lieu of prerogative writs shall be commenced, unless it shall be commenced within 30 days of the accrual of the right to such review, hearing or relief, * * *" (with certain exceptions not pertinent).
In the case of Iannella v. Johnson, 136 N.J.L. 514, at page 517 (Sup. Ct. 1948), Justice Eastwood, in holding that the writ of certiorari will not lie if the prosecutor is in laches or it has not been prosecuted with due diligence, quotes Justice Perskie's remarks in the case of Parker v. Borough of Point Pleasant, 11 N.J. Misc. 535, 167 A. 217 (Sup. Ct. 1933), in which he says:
"* * * While there is no hard and fixed rule that can be laid down for a guidance on the subject-matter of laches, nevertheless, when one seeks to invoke the discretion of the court to grant the extraordinary writ of certiorari, he must prosecute his claim with due diligence."
The case of Iannella v. Johnson, supra, was affirmed on Justice Eastwood's opinion, 137 N.J.L. 659 (E. & A. 1948).
The court, in its discretion, should limit the time within which relief will be granted by proceedings in lieu of prerogative writ. It is my view that two years is too long for a litigant to wait to commence a proceeding of this character. There is always the ordinary procedure of a complaint under the zoning ordinance and in that manner *490 the legality of the amendment to the zoning ordinance could be determined. It is my view that the plaintiffs should have started this suit more promptly and, therefore, relief should be denied to them in this action.
Delay is not the only consideration to be given to the plaintiffs' right to prosecute this action under the circumstances involved in this case. Equitable principles apply and under them not only should the action be promptly commenced but where improvements are being made and expenses being incurred by one who is improving private property pursuant to a zoning amendment, the procedure in the passing of which has been properly followed, equity requires prompt action by the party or parties initiating the proceeding, and delay is inequitable and the basis for estoppel in a case such as is here presented. Here the work was regularly commenced in the construction of a building, equipping it and conducting a business. Notice of the proposed passage of the amending ordinance was duly given and no protest was made by the plaintiffs. The work of construction was commenced on the passage of the ordinance and the plaintiff husband knew of this construction in July, before the completion of the building and, of course, before the installation of the equipment. The defendant landowners have conducted the business for two years and, undoubtedly, have established a good will, as is indicated by the large increase in sales. The plaintiffs give no reasonable excuse for a delay of two years in instituting this suit, and it looks more like an afterthought in instituting the action on the first count, which was done promptly and within the proper time limitation.
The court, in the exercise of a discretion with which it is charged, determines that the plaintiffs' delay in the institution of this action makes them guilty of laches and estops them from obtaining the relief prayed for in the second count of this action.
The relief sought in the second count will be denied for the reasons stated and the count will be dismissed. No costs.