54 N.J. Super. 309 (1959)
148 A.2d 852
ARTHUR C. SCHULTZE, PLAINTIFF-APPELLANT, AND CROSS-RESPONDENT,
v.
ROBERT WILSON, DEFENDANT-RESPONDENT AND CROSS-APPELLANT AND LEO A. BROWN AND BOROUGH OF KEYPORT, MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1958.
Decided March 2, 1959.
*312 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Robert V. Carton argued the cause for plaintiff-appellant-cross respondent (Messrs. Durand, Ivins & Carton, attorneys).
Mr. Arthur J. Sills argued the cause for defendant-respondent-cross appellant, Robert Wilson (Messrs. Wilentz, Goldman, Spitzer & Sills, attorneys; Mr. Sills of counsel; Mr. Allen Ravin, on the brief).
*313 Messrs. Applegate, Reussille, Cornwell & Hartman, attorneys for defendants-respondents, Leo A. Brown and Borough of Keyport, filed a statement in lieu of brief pursuant to R.R. 1:7-4(b).
The opinion of the court was delivered by SCHETTINO, J.A.D.
This is a proceeding in lieu of prerogative writ seeking to invalidate a building permit issued to defendant Wilson in 1954 by the borough's then building inspector, and to compel its surrender. Plaintiff also sought to restrain Wilson from proceeding with the continuance of erection of a certain structure on his premises and to compel the municipality and its present building inspector, defendant Brown, to take the necessary steps to cancel the permit.
The trial court held that plaintiff was barred from attacking the issuance of the permit by the provisions of R.R. 4:88-15(a) and by the doctrine of laches. However, it found that plaintiff had a "special interest" to entitle him to the injunctive relief requested, and restrained defendant Wilson from proceeding with the building until Wilson complied with the requirement of filing plans and specifications as set forth by the defendant municipality's building code in existence at the time the permit was issued. Relief was denied against the borough and the building inspector. From a judgment entered upon these determinations, an appeal is taken by plaintiff and cross-appeal by defendant Wilson. We are advised by the attorneys for defendants Brown and Keyport that they have no interest in the outcome and will abide by the decision of this court, so they have not participated in the appeal.
Wilson is the owner of three contiguous lots situated on the southerly side of West Front Street, Keyport. In 1954 he conducted the "Keyport Fishery" in a building on the westerly lot and the other lots were vacant. Plaintiff is the owner of a business property to the east of Wilson's lots and also conducts a restaurant business diagonally across the street from Wilson's lots. The lands owned by plaintiff *314 and Wilson on the southerly side of West Front Street lie between that street and Luppatatong Creek and are very shallow in depth. Wilson's premises at 150 West Front Street, for which the permit was issued, has a depth at the westerly end of 25.80 feet and at the easterly end of 27.8 feet. The photographic exhibits disclose a rather sharp drop from the land elevation to that of the creek.
On or about March 5, 1954 Wilson requested a building permit for the erection of a restaurant building on his premises at 150 West Front Street. On that date, defendant municipality had no zoning ordinance in force but had in effect a building code the pertinent parts of which are as follows:
"An Ordinance Regulating the Construction, Alteration and Repairing of Buildings in the Borough of Keyport (As Amended).
Be It Ordained by the Council of the Borough of Keyport:
1. This ordinance shall be known as `The Building Code,' of the Borough of Keyport and may be cited, designated or referred to by such name.

* * * * * * * *
6. Plans and specifications for plumbing work shall be filed separately with the Board of Health in accordance with An Ordinance of the Board of Health of the Borough of Keyport Governing Plumbing, Drainage and Ventilation. Passed and approved December 14th, 1911.
7. No oversight or dereliction of duty on the part of the Building Inspector shall legalize the erection, construction of any building not in conformity with the building ordinance.
8. Every applicant for a permit for the erection, alteration or raising of any building or structure, or part thereof, shall file with the Building Inspector of the Borough of Keyport plans and specifications for that purpose; and shall also file with said Building Inspector a written statement of the location and estimated cost; also the intended use of the proposed building or structure. If it shall appear to the said Building Inspector that the ordinances of the said Borough are complied with, he shall grant such permit."
It is conceded that Wilson did not file any plans or specifications whatsoever and none was required by the building inspector. However, Wilson did make known, and it is so stated in the municipality's listing of "Building Permits March 1954," that he intended to build a store at the *315 approximate cost of $9,600. Neither this list nor the permit itself otherwise described the proposed building or its location on the land. There was also uncontradicted testimony at the trial that as of March 1954 the building inspector did not have any forms for applications for building permits and that the filing of plans and specifications was never demanded by the building inspector as a condition precedent to the issuance of permits. These facts support the inference that the requirement of filing plans and specifications was virtually never enforced in Keyport.
The permit was issued to Wilson on March 5, 1954. Within a few days, he had constructed footings and one course of foundation of cinder blocks on the property, extending across the front of the lot practically adjoining the sidewalk and down the easterly and westerly sides to the top of the embankment. Blocks were not laid along the embankment in the rear. The cost of this work was $455.65. Plaintiff concedes his knowledge of this construction while it was in progress.
On November 9, 1954 Wilson undertook, pursuant to R.S. 12:3-10, to secure the riparian rights in that portion of Luppatatong Creek to the rear of the premises upon which he laid the blocks. Obviously, the shallowness of the lot required that the rear portion of the building he planned to erect would have to extend over the riparian lands and he had been advised he could not build thereon without obtaining a riparian grant. Plaintiff vigorously contested Wilson's attempt to secure this grant but on January 30, 1956 Wilson secured a deed from the State granting him the rights. This grant was unsuccessfully attacked in the courts by plaintiff. Schultz[e] v. Wilson, 44 N.J. Super. 591 (App. Div. 1957), certification denied 24 N.J. 546 (1957).
Plaintiff filed the complaint herein and obtained an order to show cause on March 23, 1956. Subsequently, in August 1956, an amended complaint was filed. It was alleged that the building permit was issued in violation of the provisions of the building code of the defendant municipality "in that no plans, and specifications were filed, nor was any written *316 statement of the location, estimated cost or intended use filed, nor plans and specifications of the plumbing work filed with the Board of Health, * * *"; that at the time of the issuance of the permit there was then pending before the mayor and council of the defendant municipality "an ordinance providing for the adoption of an ad interim zoning, which said ad interim zoning ordinance was passed on March 22, 1954"; that there is a comprehensive zoning ordinance now in effect in the defendant-municipality; that defendant now proposes, acting upon the building permit granted to him, to erect "upon the premises owned by him at the time of the issuance of the said building permit and upon the premises thereafter acquired by him as aforesaid [i.e., the riparian grant] a building structure to be used for the purposes of a restaurant," and that "If said building is constructed, it will be erected in part upon land for which no building permit has been issued, and it will be in violation of the zoning ordinance of the Borough of Keyport."
The answers of the defendants raised, inter alia, the defenses of R.R. 4:88-15(a) and laches. Defendant Wilson answered that he was issued a valid permit, that he was not subject to the subsequently enacted zoning ordinance and that he never abandoned construction but was delayed by plaintiff's actions.
It is conceded that no work was done on the premises from the laying of the cinder blocks in March 1954 to March 1956, when Wilson began the installation of pilings for the support of his building. The cost of the construction of the pilings was $1,320. Wilson expended a total of approximately $2,100 for the work he had done on the property.
At the trial plaintiff contended that if the building proposed by Wilson be constructed, it will be erected in part upon lands for which no building permit has been issued, i.e., the riparian lands acquired by Wilson subsequent to the issuance of the permit. Wilson answered that he had preemptive rights to the riparian lands at the time of the *317 issuance of the permit sufficient to entitle him to it and that the permit was intended to permit construction over these lands. Wilson testified that the structure he planned to build in 1954 encompassed both the land he then owned and the riparian lands he later acquired. It seems clear that the permit was intended to cover construction on both the lands owned in fee and the riparian lands.
The trial court found that the building permit could legally only cover a building on the lands owned in fee by Wilson at the time of its issuance. It also found that the plaintiff was barred by R.R. 4:88-15(a) and by laches from prosecuting a suit to invalidate the permit and to have the building inspector and the borough revoke it. But it found that the plaintiff had a "special interest," presumably as an adjoining landowner, with a continuing right not lost by inactivity, to have plans and specifications filed by Wilson with the building inspector, complying with the building code, for the building to be constructed on the property owned by him in March 1954, and enjoined Wilson from proceeding with the building until Wilson complied with the requirements as to plans and specifications.
On this appeal plaintiff argues that he is not barred from suing by either R.R. 4:88-15(a) or laches, and that the permit was void ab initio and may not now be validated by filing plans and specifications and that the construction may not go forward until a new permit under the present ordinance is obtained. In addition to countering plaintiff's contentions, Wilson argues that the trial court erred in fact and in law in finding that the building permit encompassed only the land owned by him on March 5, 1954 and in restraining him from proceeding with construction until he filed plans and specifications, as well as contending that plaintiff has no standing to prosecute this suit.
Before considering the respective points urged, we should note that under the zoning ordinance of the borough adopted in March 1954, a few days after the permit was issued and the foundation work done, the property in question was placed in a business zone in which the proposed restaurant *318 use is permitted. However, by the present ordinance, a front yard setback of 10 feet from the street line is required as well as a rear yard setback of 20 feet. Wilson's proposed building would not meet either requirement. While we are not directly concerned in this case with the zoning ordinance and its requirements, the case is obviously permeated with the desire and effort of Wilson to avoid the application of the yard requirements to his building by commencing construction before the ordinance became effective, and with the wish of plaintiff to invalidate that activity and prevent continuance of construction unless a new permit were obtained (as to which the yard requirements would apply and practically might well not allow erection of a large enough building on the limited land remaining) in the interest of avoiding the establishment of a competing restaurant business in the vicinity. While the precise effect of the trial court's decision is not entirely clear, it would seem that since the permit was not invalidated as to a building limited to the land Wilson owned in fee at the time of issuance, provided proper plans and specifications are now filed, and so construction could be continued as commenced within ten feet of the street line, Wilson would have to obtain a new permit to erect any part of the building over the riparian lands, as to which the rear yard requirement of the zoning ordinance would be applicable. The purpose of Wilson's cross-appeal appears to be to avoid this latter effect, while plaintiff's appeal, in claiming that the building permit was void ab initio and no vested rights were acquired thereunder, seeks to compel Wilson to obtain a new permit for any further construction, as to which both front and rear yard requirements would have to be met, and perhaps thereby make the building not feasible at all.
We hold that plaintiff's amended complaint should have been dismissed in its entirety because of plaintiff's lack of standing to bring the action. Additionally, even if plaintiff were a proper party to bring the action, we conclude that it is barred by R.R. 4:88-15(a) and by laches.
*319 There is no doubt that under the modern decisions a citizen has standing to attack municipal action which impairs a zoning plan, Kozesnik v. Montgomery Tp., 24 N.J. 154, 177 (1957), or where the municipal action "raised a question of gross illegality and abuse of their public responsibilities by the officials of the borough" (emphasis added), Koch v. Borough of Seaside Heights, 40 N.J. Super. 86, 93 (App. Div. 1956), affirmed on opinion, 22 N.J. 218 (1956). However, we hold that the right to sue without a showing of a "special interest" does not extend to actions of the municipality that are denominated as merely "irregular" as distinguished from "utterly void" or "grossly illegal." The courts are not open to every citizen who wishes to question slight irregularities in the municipality's exercise of its duties and functions.
The trial court held that plaintiff did have a "special interest" in this matter, presumably as an adjoining property owner. However, as we read the authorities we find that plaintiff has not satisfied the "special interest" or "special damages" requirements of either a suit in the nature of a prerogative writ or for an injunction restraining the property owner who is alleged to have violated a municipal ordinance. Regarding the former, we note that the cases deal with situations where an adjoining or nearby landowner violates a zoning ordinance and constructs a prohibited edifice or operates a prohibited use near the plaintiff's conforming property. Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953); Stokes v. Jenkins, 107 N.J. Eq. 318 (Ch. 1930). It is certainly not every violation of such an ordinance which gives rise to a right of action in favor of adjoining landowners.
But such is not the case we have here. At the time the permit was granted to Wilson there was no zoning ordinance in effect in Keyport. The only irregularities were Wilson's failure to file plans and specifications and the inspector's failure to require them. But we note that no particular plans and specifications were required by the building code and Wilson was free to construct any type of *320 building on his premises. Plaintiff has suffered, and under the proofs presented will suffer, no direct harm from the mere failure to file plans and specifications. The only special damage which plaintiff might suffer is Wilson's anticipated competition with plaintiff's restaurant business. This is clearly not what is required to confer standing. In this instance there was no specific requirement in effect on March 5, 1954 which was violated that could cause any member of the general public to suffer special damages thereby conferring standing to sue. Cf. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250, 258-259 (1951).
Similar considerations apply to plaintiff's standing to procure injunctive relief. In Garrou, supra, defendant's tenant was conducting a parking lot on its premises in a residential zone which premises adjoined those of the plaintiff. In granting plaintiff's request to enjoin the violation of the zoning ordinance and to compel the defendant municipal officials to enforce the ordinance against the private defendants, Mr. Justice Jacobs stated (11 N.J. at page 300):
"The second contention advanced by the private defendants is that the plaintiff has no standing to obtain an equitable injunction against violation of the zoning ordinance. See Srager v. Mintz, 109 N.J. Eq. 544 (E. & A. 1932); Dinkins v. Kip, 110 N.J. Eq. 486 (Ch. 1932). The plaintiff is not acting simply as a citizen or taxpayer of the community in his quest to prevent further violation of the zoning ordinance. He is a property owner whose home adjoins the premises where the violation is occurring and he alleges special damages in that he and his family are being discommoded and his property depreciated. His interest is distinct from and greater than that of the community as a whole and we perceive no reason for denying him fair opportunity to vindicate and protect that interest; we consider that such denial would not only operate unjustly as to him but would also retard the public interest. Cf. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250, 258 (1951).
In Mayor of Alpine Borough v. Brewster, 7 N.J. 42, 52 (1951), this court recently recognized the general rule that an individual may obtain an equitable restraint against violation of a zoning ordinance where he has `sustained special damage over and above the public injury.' This rule is well established in other jurisdictions (129 A.L.R. 885, (1940)) and has properly been applied in our *321 Chancery Division under circumstances comparable to those presented in the instant matter. See Frizen v. Poppy, 17 N.J. Super. 390, 393 (Ch. Div. 1952); Yanow v. Seven Oaks Park, Inc., 15 N.J. Super. 73, 80 (Ch. Div. 1951). See also Stokes v. Jenkins, 107 N.J. Eq. 318 (Ch. 1930)."
And see also Morris v. Borough of Haledon, 24 N.J. Super. 171, 178-179 (App. Div. 1952); Menges v. Tp. of Bernards, 4 N.J. 556 (1950); and Annotation, "Injunction as remedy for violation of zoning ordinance," 129 A.L.R. 885 (1940).
There is no proof of a nuisance in the instant case. Equally absent is the proof of the type of special damages that would entitle plaintiff to equitable relief. For these reasons plaintiff's complaint should have been dismissed in its entirety.
There is an additional basis for dismissing plaintiff's action. Even if plaintiff did suffer special damages and has standing to sue, the action is barred by the provisions of R.R. 4:88-15(a) and by laches. R.R. 4:88-15(a) provided in 1956:
"(a) No proceedings for review, hearing and relief in lieu of prerogative writs shall be commenced, unless it shall be commenced within 30 days of the accrual of the right to such review, hearing or relief, except as provided in paragraph (b) of this rule, and except as provided in Rule 1:3-1."
It is necessary to determine, prior to the application of this rule, whether the building permit is "utterly void" or merely "irregular" and whether plaintiff's attack herein is to be denominated "direct" or "collateral." It is clear that if the permit is "utterly void," then it may be subject to "collateral" attack at any time, but a "direct" attack must be made within the limitations period whether the permit be merely "irregular" or "utterly void." Thornton v. Village of Ridgewood, 17 N.J. 499, 510 (1955); Marini v. Borough of Wanaque, 37 N.J. Super. 32, 40 (App. Div. 1955); V.F. Zahodiakin Engineering Corp. v. Zoning Board of Adjustment, Summit, 8 N.J. 386, 395 (1952).
That this action constitutes a direct attack on the permit is evidenced from a reading of the amended complaint *322 and pretrial order. The amended complaint demanded judgment against Wilson in part as follows:
"(a) The defendant, Robert Wilson, his agents, servants contractors, employees or representatives be restrained from taking any action pursuant to, under or by virtue of the building permit previously issued to it.

* * * * * * * *
(c) That the defendant, Robert Wilson, deliver and surrender to the Building Inspector of the Borough of Keyport, the building permit previously issued to him for the premises at 150 West Front Street, Keyport, New Jersey."
The pretrial order supports our finding that plaintiff's action is a direct attack. This being so, and plaintiff admitting his awareness of the commencement of construction in March 1954, the rule is applicable. We reach this determination with consideration of the language of Judge Francis in Theresa Grotta Home v. Bd. of Adjustment, North Caldwell, 19 N.J. Super. 331, 336-337 (App. Div. 1952):
"If public need exists for pressing prerogative writ litigation to prompt conclusion after it is instituted, an even greater need for prompt and timely institution thereof must co-exist. * * *
* * * Invariably the expiration of a period of limitation prescribed by the Legislature has been deemed by the courts to give birth to a vested right in the person against whom the cause of action existed to be forever free from prosecution thereon. This doctrine is deeply imbedded in our law."
See also Board of Education of Fort Lee v. Mayor, etc., of Fort Lee, 31 N.J. Super. 22, 27 (App. Div. 1954); Boulevard Improvement Co. v. Academy Associates, 3 N.J. Super. 506, 515-516 (Law Div. 1949).
We hold that plaintiff's action constitutes a direct attack on the building permit and is barred by R.R. 4:88-15(a).
The permit may not be collaterally attacked because it is merely "irregular" and not "utterly void." We find that the failure to file plans and specifications is a mere irregularity. There is no dispute that Wilson could build a restaurant in the area in question on March 5, 1954, without being required to provide front or rear yards. The defect here, the failure to file plans and specifications, could *323 easily be ordered corrected. The importance of determining whether the permit is irregular or utterly void is because of the rule that substantial reliance will protect the permittee if the permit be irregular but not if it be utterly void. Compare Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504 (1955). The rule and situations are set out lucidly by Judge Weintraub in Jantausch v. Borough of Verona, 41 N.J. Super. 89, 93-94 (Law Div. 1956), affirmed 24 N.J. 326 (1957):
"Our cases clearly settle the controlling principles at the extreme poles of the problem. Where the permit is regularly issued in accordance with the ordinance, it may not be revoked after reliance unless there be fraud. [citing cases] On the other hand, where there is no semblance of compliance with or authorization in the ordinance, the deficiency is deemed jurisdictional and reliance will not bar even a collateral attack after the expiration of time limitation applicable to direct review. [citing cases] * * *"
Judge Weintraub then goes on to explain the "intermediate situation in which the administrative official in good faith and within the ambit of his duty makes an erroneous and debatable interpretation of the ordinance and the property owner in like good faith relies thereon." He states that the dictum in favor of estoppel contained in Freeman v. Hague, 106 N.J.L. 137, 140 (E. & A. 1929), perhaps falls in this area. In Freeman the court said:
"But, even if it be assumed that the board of commissioners had improperly or erroneously recommended the granting of the permit, nevertheless we are clearly of the view that the board was without lawful power to revoke such permit, after the prosecutrix had acted upon the faith of it, by the expenditure of moneys in the prosecution of the work, and had entered into contractual relations, with builders, for the erection of the garage, unless it appeared that such permit was obtained by fraud or deceit."
Although Judge Weintraub was concerned with an ordinance situation and not a building permit case, a reasonable interpretation of his "intermediate" category applies to the instant situation where the officer issues a permit "within the ambit of his duty" in the utmost good faith (there is no proof to the contrary herein) and the property *324 owner accepts it in good faith and relies thereon. As the permit was within the jurisdiction of the inspector to issue even if it was issued irregularly, it was not utterly void. We conclude that Wilson's above-mentioned expenditures "in connection with the actual commencement of excavation or construction" (Crecca v. Nucera, 52 N.J. Super. 279, 286 (App. Div. 1958)) constitute substantial reliance sufficient to give him a vested right under the irregularly issued permit. L.P. Marron & Company v. Township of River Vale, 54 N.J. Super. 64 (App. Div. 1959), decided February 2, 1959; Roselle v. Moonachie, 49 N.J. Super. 35, 40 (App. Div. 1958); Sun Oil Co. v. Clifton, 16 N.J. Super. 265 (App. Div. 1951). Cf. Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra (19 N.J., at page 504).
Finally, we hold that plaintiff's action is barred by laches. "Whether or not laches bars a cause of action, depends on the circumstances of the case." Heagan v. Borough of Allendale, 42 N.J. Super. 472, 485 (App. Div. 1956); Donnelly v. Ritzendollar, 14 N.J. 96 (1953). Generally speaking, laches is not imputed to one who has no knowledge, or means of acquiring knowledge, of the facts giving rise to his cause of action. Donnelly case, supra (14 N.J. at page 108). But here plaintiff admits his awareness of the inception of construction in 1954. He seeks to avoid the defense of laches by asserting that he is not contesting the right of Wilson to build on the lands he actually owned in 1954, but the right to build on the riparian lands without a permit encompassing these lands, and that construction on this area did not occur until within 30 days of the institution of this action. However, we find that under the circumstances of this case, plaintiff was aware at the time of his contesting the riparian grant that Wilson intended to build thereon and with the same permit. We refer to the language of Judge Conford in the Marini case, supra (37 N.J. Super., at page 41):
"Finally, we think laches additionally bars plaintiff's way. We are satisfied that he knew what was going on in respect to this *325 structure and withheld his legal fire during a period in which he knew or had every reason to know that a substantial sum of money was being invested in the improvement of this property. Wight v. New Jersey Racing Commission, 128 N.J.L. 517 (Sup. Ct. 1942); Travis v. Borough of Highlands, 136 N.J.L. 199 (Sup. Ct. 1947); Jones v. Zoning Board of Adjustment, 28 N.J. Super. 483 (Law Div. 1953), affirmed on other grounds 32 N.J. Super. 397 (App. Div. 1954); Summer Cottagers' Association of Cape May v. City of Cape May, 34 N.J. Super. 67 (Law Div. 1954). We are aware of the policy that laches should be invoked with hesitation against a taxpayer and citizen vindicating a public right, Garrou v. Teaneck Tryon Co., supra (11 N.J. at pages 306, 307), but we deem the application of laches plainly indicated in the present case."
See also Iannella v. Johnson, 136 N.J.L. 514, 516-517 (Sup. Ct. 1948), affirmed on opinion, 137 N.J.L. 659 (E. & A. 1948); Parker v. Point Pleasant, 11 N.J. Misc. 535, 540 (Sup. Ct. 1933), not officially reported.
It should also be said that Wilson, as the riparian owner, had a sufficient interest in the riparian lands, by reason of his preemptive right to acquire the same (R.S. 12:3-10) to apply for and obtain a municipal building permit for construction on or over them in advance of actual acquisition thereof. An applicant for such a permit does not have to own the property. It is sufficient if he has an interest therein. Cox v. Wall Township, 39 N.J. Super. 243, 249 (App. Div. 1956). Moreover, plaintiff as a stranger has no standing to attack the issuance of a permit on this ground. Such could only be done by the actual owner. Adams v. Jersey City, 107 N.J.L. 149, 150 (E. & A. 1930).
That portion of the judgment in favor of defendant Wilson and against plaintiff dismissing so much of the first count of the amended complaint as seeks to invalidate and revoke the building permit is affirmed as well as that portion in favor of defendants Brown and the borough on the second count. That part of the judgment in favor of plaintiff and against defendant Wilson enjoining and restraining him from proceeding with construction is reversed and judgment of dismissal is directed to be entered. Costs are awarded in the trial court and on this appeal to defendant Wilson only.