123 N.J. Super. 69 (1973)
301 A.2d 474
GERALD D. KOHLER, PLAINTIFF,
v.
RAYMOND BARNES, MAYOR OF THE TOWNSHIP OF HOWELL, WILLIAM M. PATTERSON, MEMBER OF THE INDUSTRIAL COMMISSION OF THE TOWNSHIP OF HOWELL, AND THE INDUSTRIAL COMMISSION OF THE TOWNSHIP OF HOWELL, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued February 26, 1973.
Decided March 1, 1973.
*74 Mr. Ernest J. Gikas argued the cause for plaintiff.
Mr. John Jay Mangini argued the cause for defendants (Messrs. Campbell, Mangini, Foley, Lee & Murphy, attorneys).
LANE, J.S.C.
This action in lieu of prerogative writs contesting the appointment of William M. Patterson to the Howell Township Industrial Commission and the overall current composition of that Commission is before the Court on final hearing.
Plaintiff is a resident and taxpayer in Howell Township. Defendant Raymond Barnes is Mayor of Howell Township and has been since January 1, 1972. Defendant William M. *75 Patterson was Mayor of the Township from January 1 to December 31, 1970. On September 25, 1972 he was appointed to the Township's Industrial Commission by defendant Barnes.
Howell Township contains 63 square miles and has a population of approximately 23,000. Twenty percent of the Township is densely developed. There is some industry. The balance of the Township is rural.
The Township's Industrial Commission was created by an ordinance adopted on November 9, 1970 by the Township governing body, pursuant to N.J.S.A. 40:55B-1 et seq. The Legislature's findings and purpose in providing for such commissions are set forth in N.J.S.A. 40:55B-2.
It is hereby found and declared as follows:
a. That unless many municipalities are to accept decadence and obsolescence as their inevitable lot, they must thoroughly analyze, their position in the industrial structure of the county and then completely mobilize their potential resources for efficient manufacture; that the location of industry today is more and more the result of an impartial, scientific study of basic economic conditions; that one of the basic difficulties of many of the municipalities of this state is that they do not know themselves; that they have little appreciation of either their economic strength or their economic weakness; that they have never studied impartially, either the economic advantages or the economic disadvantages of their own peculiar geographic position; that there had been an abundance of publicity campaigns and boosting campaigns founded upon superficial generalities and not well designed to enlighten the prospective manufacturer; that a frank inventory of the industrial life of New Jersey communities as a deliberate and sober inquiry of scientific character is necessary to ascertain their real needs and to determine their potential resources for efficient manufacture with a constructive program for sustained and selective growth and a long term policy of industrial rehabilitation and development is necessary.
b. That there are now many thousands of unemployed persons within the state of New Jersey, who, if profitably employed, would create annual pay rolls of millions of dollars; that the re-employment of the present unemployed would quicken and improve social conditions.
Members of the commissions are described in N.J.S.A. 40:55B-5, which states in pertinent part:
*76 The members of each commission shall be appointed by the mayor of the municipality of its creation. Each member shall be, for the last five years preceding his appointment, a citizen of the United States and a qualified voter of the state of New Jersey. * * *
Each member shall be chosen with a special view to his qualifications and fitness for service on the commission. He shall have had experience in industry or commerce and shall be conversant with the industrial needs and facilities of his commission's municipality, and shall be of known devotion to public service.
There shall be appointed upon said commission, unless local conditions shall otherwise require, at least one thoroughly competent representative of mill owners and operators of mill properties; a representative of labor; a representative of the clearing house or banks of said municipality; a representative of the chamber of commerce; a representative of the service clubs of such municipality; a representative of the legal profession; and a representative of a recognized real estate dealer's association.
N.J.S.A. 40:55B-8 sets forth the purposes, functions, and powers (in addition to the general powers, N.J.S.A. 40:55B-7) of these commissions:
Every commission created under this chapter shall constitute the corporate instrumentality of the municipality, by which it is created, for the following purposes:
a. To inquire into, survey and publicize the extent, advantages and utility of the vacant lands of such municipality, whether municipally owned or otherwise.
b. To classify such vacant lands according to their adaptability for the settlement thereon of various types of industrial enterprises.
c. To study and analyze the various industries of the nation and, to the extent it deems necessary for its purposes, the industries of other nations, with a view to ascertaining the opportunities for the industrial expansion of the municipality. In this connection the reports, records, statistics, compenda and similar documents of existing federal, state, county, municipal and other governmental and public agencies, as well as of responsible private institutions, boards, agencies and similar bodies interested in the compilation of the information relating to industry, shall be resorted to, wherever possible, in order to avoid unnecessary original research and gathering of source material.
d. To advertise the industrial advantages and opportunities of its municipality and the availability of real estate within the municipality for industrial settlement and to encourage and accomplish such industrial settlement within the municipality.
e. To solicit the several industries to purchase or lease the vacant lands and property of or in the municipality.
*77 f. To accomplish the sale or lease of the municipality's vacant lands to industries whose settlement thereon is best calculated, in the judgment of the commission, to advance the interests of the municipality and of its citizens and inhabitants.
g. To acquire title to vacant land owned by the municipality for the purpose of resale or lease to industries whose presence within the municipality will benefit in the judgment of the commission, its citizens and inhabitants.
N.J.S.A. 40:55B-9 states:
The commission shall make a study of the tax structure with a view to reducing the tax burden of the municipality.
The Howell Township ordinance creating the municipal Industrial Commission substantially incorporates the provisions of N.J.S.A. 40:55B-1, et seq., and specifically follows the language of Section 5, above, providing for the qualifications and selection procedure for members of the commission.
Plaintiff draws particular attention to the statutory and ordinance requirements that members should have had experience in industry or commerce, be conversant with industrial needs and facilities of the Township, and be of known devotion to public service, and that the commission should, where appropriate, include a representative of mill properties, labor, banks, the Chamber of Commerce, the legal profession and a real estate dealers' association.
When defendant Patterson was appointed to the Commission in September 1972, the Commission had no representative of labor, the Chamber of Commerce, the legal profession, or a recognized real estate dealers' association. The Commission did have members with a background in real estate, in banking and in the operation of mill properties. Two of the members of the Commission had an agricultural background.
Plaintiff asserts that since at the time of defendant Patterson's appointment the Commission already had two members representing agricultural interests, and Patterson is an *78 owner and operator of a dairy farm, his appointment is inappropriate. Plaintiff contends that this appointment was made at a time when local conditions in the Township of Howell did not require it, that only appointments of persons in the categories not yet represented on the Commission would have been appropriate, and that therefore Patterson's appointment was arbitrary, capricious, unreasonable and contrary to the ordinance and statute.
After the Commission was established, applications from residents interested in serving on it were solicited before appointments were made. Defendants argue that the seven categories set forth in the statute and ordinance are well represented on the Commission by individuals whose background, experience and expertise include mill ownership and operation, labor, Township banks, the Chamber of Commerce, Township service clubs and the real estate profession. Defendants assert that since the township attorney serves as attorney for the Commission, he is a sufficient representative of the legal profession. Patterson was a member of the Howell Township School Board for a number of years, a member of the Township Committee for three years and Mayor for one year. He was also on the Planning Board for three years. In addition to his farming activities, he is a member of the Farmingdale Grange which was described as being a service organization serving Howell Township.
Plaintiff seeks (1) a declaratory judgment that the Industrial Commission is illegal and void and the result of arbitrary, capricious and unreasonable appointments by the present mayor and former mayors of Howell Township; (2) an order restraining Patterson from acting as a member of the Commission; (3) an order directing the mayor to appoint replacements for Patterson and other challenged members; and (4) an order directing the mayor to follow the statute in appointing future members.
Defendants argue that plaintiff is barred by R. 4:69-6 or laches from challenging the appointment of members of the Commission other than Patterson.
*79 R. 4:69-6 provides:
(a) General limitation. No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed, * * *.
* * * * * * * *
(c) Enlargement. The court may enlarge the period of time provided in paragraph (a) * * * where it is manifest that the interest of justice so requires.
Generally, a cause of action accrues when facts exist which entitle one party to maintain an action against another. Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J. Super. 522, 540 (App. Div.), modified 64 N.J. Super. 1 (App. Div.), certif. den. 33 N.J. 387 (1960); Marini v. Borough of Wanaque, 37 N.J. Super. 32, 38 (App. Div. 1955).
The rule is generally established that mere ignorance of the existence of a cause of action or of the facts which constitute a cause of action will not prevent the running of the statute of limitations or postpone the commencement of the period of limitation. Diamond v. N.J. Bell Telephone Co. et al., 51 N.J. 594, 597 (1968); Joseph v. Lesnevich, 56 N.J. Super. 340, 355 (App. Div. 1959); Zimmerman v. Cherivtch, 5 N.J. Super. 590, 593 (Law Div. 1949). The only exception made to this rule has been where the basis for an action has been fraudulently concealed, Joseph v. Lesnevich, supra, 56 N.J. Super. at 355; Zimmerman v. Cherivtch, supra, 5 N.J. Super. at 593-594, or where the facts of which plaintiff is ignorant could not have been discovered by reasonable inquiry or diligence. Cf. Diamond v. N.J. Bell Telephone Co. et al., supra, 51 N.J. at 597; 51 Am. Jur.2d, Limitation of Actions, § 146, p. 715 (1970). It has been held that each official step in the course of an illegal program has the capacity to invoke the remedy of certiorari without the necessity of awaiting specific damage or tangible manifestations. Marini v. Borough of Wanaque, supra, 37 N.J. Super. at 38.
*80 Similar criteria have been applied to the defense of laches also relied on by defendants in this case. Whether laches bars a cause of action depends on the circumstances of the case. Donnelly v. Ritzendollar, 14 N.J. 96, 107 (1953); Schultze v. Wilson, 54 N.J. Super. 309, 324 (App. Div.), certif. den. 29 N.J. 511 (1959). Generally, laches is not imputed to one who has no knowledge, or means of acquiring knowledge, of the facts giving rise to his cause of action. Id. The mere lapse of time does not constitute laches. The delay must be unreasonable under the circumstances which, unexplained and unexcused, has been prejudicial to the party asserting it. West Jersey Title, etc., Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958); Hill Dredging Corp. v. Risley, 18 N.J. 501, 537 (1955); Stroebel v. Jefferson Trucking & Rigging Co., 125 N.J.L. 484, 488 (E. & A. 1940).
Exceptions to the time limitations imposed upon the in lieu procedure should be but exceptionally condoned and only in the most persuasive circumstances. Robbins v. Jersey City, 23 N.J. 229, 238 (1957); Kent, et al. v. Bor. of Mendham et al., 111 N.J. Super. 67, 76 (App. Div. 1970). R. 4:69-6(c) was intended to restate in the form of a generalized standard decisional exceptions which had been engrafted upon the former limitation rules. Schack v. Trimble, 28 N.J. 40, 48 (1958). These exceptions include: substantial and novel constitutional issues, informal or ex parte determinations made by administrative officials which do not involve "a sufficient crystallization of a dispute along firm lines to call forth the policy of repose," and an important public rather than private interest requiring adjudication. See Schack v. Trimble, supra, 28 N.J. at 47, 49-51; Kent, et al. v. Bor. of Mendham et al., supra, 111 N.J. Super. at 76; Bernstein v. Krom, 111 N.J. Super. 559, 564 (App. Div. 1970).
Plaintiff's complaint falls within none of the exceptions to the limitation rule. Insofar as plaintiff seeks to challenge individual appointments made to the Commission *81 more than 45 days before the complaint was filed on October 17, 1972 the challenge is out of time. All the appointments except of Patterson were made more than 45 days before October 17, 1972.
Is the language of N.J.S.A. 40:55B-5 governing the Commission's composition directory or mandatory; and if mandatory, is it unconstitutional because of unreasonable classification?
The language specifically challenged reads:
Each member shall be chosen with a special view to his qualifications and fitness for service on the commission. He shall have had experience in industry or commerce and shall be conversant with the industrial needs and facilities of his commission's municipality, and shall be of known devotion to public service.
There shall be appointed upon said commission, unless local conditions shall otherwise require, at least one thoroughly competent representative of mill owners and operators of mill properties; a representative of labor; a representative of the clearing house or banks of said municipality; a representative of the chamber of commerce; a representative of the service clubs of such municipality; a representative of the legal profession; and a representative of a recognized real estate dealer's association.
In determining whether a statute is mandatory or directive regard shall be had to the purpose and intent of the Legislature. The word "may" is ordinarily permissive or directory, and the words "must" and "shall" are generally mandatory. Such terms, however, have been held to be interchangeable whenever necessary to execute the clear intent of the Legislature. Such intent may be implied from the language used or inferred on grounds of policy and reasonableness. Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 391-392 (1959).
There is a presumption that the word "shall" is used in an imperative and not a directory sense, and while this presumption is not a conclusive one it can only be overthrown by something in the character of the legislation or in the context which will justify a different meaning. Union *82 Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166 (1954); In re Munson-Lied Co., 68 N.J. Super. 281, 287 (App. Div. 1961).
When the provision of an act contains the essence of the ends sought by the Legislature, it is mandatory; but where it relates to the form and manner and where an act is incidental, it is directory. Keyport Sewerage Authority v. Granata, 52 N.J. Super. 76, 86 (Law Div. 1958); Sheldon v. Sheldon, 100 N.J. Eq. 24, 25 (Ch. 1926). If no public benefit ensues from and no private right is insured by giving the word "shall" an imperative meaning, it is to be construed as directory rather than mandatory. In re Norrell, 139 N.J. Eq. 550, 554 (E. & A. 1947); In re Munson-Lied Co., supra, 68 N.J. Super. at 287.
In Keyport Sewerage Authority v. Granata, supra, the appointment of a member of a Sewerage Authority was challenged on the ground that the resolution appointing him was not filed with the office of the Secretary of State as required by statute. Although the relevant provision used the word "shall," the court concluded that the essence of the act was to provide sewerage service and that the method by which members were to be appointed was therefore procedural, incidental to the main purpose of the statute, and directory.
In In re Munson-Lied Co., supra, the trial court's jurisdiction over an assignment proceeding was challenged on the grounds that the assignee had failed to record it in a timely fashion as required by statute. Although the relevant provision used the word "shall," the Appellate Division concluded that recording of the assignment was a procedural matter, not going to the essence of the act, and was therefore directory.
The Legislature's intent in adopting N.J.S.A. 40:55B-1 et seq., may be found in the title to the act from which it is directly derived, L. 1936, c. 154, which states that it is:
AN ACT to permit the creation by the governing body of any municipality of this State of a local industrial commission, with authority to inquire into, survey and publicize the extent and advantages *83 of the municipalities creating such commissions, and defining the powers and duties of commissions so created, and of the creating municipalities in connection therewith.
The purposes of the act set forth in N.J.S.A. 40:55B-2 have already been quoted. It is apparent that the Legislature's intent, and the essence of the act, is to create an industrial commission to insure efficient and effective industrial development of individual municipalities. The challenged provision, N.J.S.A. 40:55B-5, essentially provides that the composition of the Commission shall be appropriate to achieve these goals, that is, that its members shall be familiar with the community and experienced in the skills necessary to plan for industrial growth. The precise categories of experience listed are expressly discretionary where "local conditions shall otherwise require," and such would necessarily be the case, even if this proviso were not included, since not every community is certain to include representatives of the seven categories listed.
In view of the flexibility of the challenged language, the way in which the statute must apply in practice, and the fact that these categories are essentially procedural requirements not directly related to what appears to be the essence of the act, the requirements of N.J.S.A. 40:55B-5 are directory, not mandatory.
If this conclusion is accepted, the issue of the constitutionality of the categories set up in the act is moot. However, this question will be considered because one knows not whither this record may go.
There is a strong presumption that a statute is constitutional, and a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. To declare a statute unconstitutional is a judicial power to be delicately exercised. Harvey v. Essex County Board of Freeholders, supra, 30 N.J. at 388.
The constitutional requirement of equal protection is met by legislation which treats all persons within a class reasonably selected in a like or similar manner. Robson v. *84 Rodriquez, 26 N.J. 517, 523 (1958). The nature of legislative classifications was considered by Justice Heher in Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949):
Though the state has a broad discretion in the selection of the class, it is requisite that the classification have a reasonable and just relation either to the general object of the legislation or to some substantial consideration of public policy or convenience or the service of the general welfare. Otherwise, there would be arbitrary discrimination. The Legislature may, without running afoul of the Fourteenth Amendment or the due process and equality clauses of the State Constitution, make distinctions of degree having a rational basis; and they will be presumed to rest on that basis if there be any conceivable state of facts which would afford reasonable ground for its action. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); Charles C. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). These constitutional limitations safeguard the fundamental rights of persons and of property against arbitrary and oppressive state action. Singer Sewing Machine Co. v. New Jersey Unemployment Compensation Commission, 128 N.J.L. 611 (Sup. Ct. 1942), affirmed 150 [130] N.J.L. 173 (E. & A. 1943).

* * * * * * * *
The equal protection clause means that the right of all persons must rest upon the same rule under similar circumstances, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770 (1928). While the due process and equal protection guaranties are not coterminous in their spheres of protection, equality of right is fundamental in both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances. It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation or considerations of policy, and that there be uniformity within the class. The equal protection of the laws means that no person or class of persons shall be denied the protection of the laws enjoyed by other persons or classes of persons under similar conditions and circumstances, in their lives, liberty, and property, and in the pursuit of happiness, both as respects privileges conferred and burdens imposed. [1 N.J. at 552-553]
Equal protection does not require that all persons be dealt with identically. N.J. Chapt., Am. I.P. v. N.J. State *85 Bd. of Prof. Planners, 48 N.J. 581, 601, appeal dismissed, cert. den. 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967).
Generally state legislatures are presumed to have acted within their constitutional powers despite the fact that in practice their laws result in inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. State in Interest of K.V.N., 116 N.J. Super. 580, 587 (App. Div. 1971), aff'd o.b. 60 N.J. 517 (1972).
The Legislature may prescribe qualifications which reasonably relate to the needs of office-holding or to the specialized demands of an office. Alongi v. Schatzman, 57 N.J. 564, 575 (1971). The Legislature's powers in this regard extend also to qualifications for appointive positions. See Brown v. State, et al., 115 N.J. Super. 348, 351 (App. Div.), certif. den. 59 N.J. 273 (1971); Mulligan v. Wilson, 110 N.J. Super. 167, 172-173 (App. Div. 1970).
The qualifications for appointment to an industrial commission set forth in N.J.S.A. 40:55B-5, whether viewed as mandatory or directory, are reasonably related to the specialized demands of membership on such a commission as well as to the demands on the Commission as a whole.
It is argued that even if the statute and the ordinance based on it are directory and constitutional, the mayor exercised his discretionary authority arbitrarily and capriciously in choosing Patterson.
Plaintiff's action may be viewed as one in lieu of certiorari seeking to review the mayor's exercise of discretion. The remedy of certiorari is available to persons whose rights are invaded by acts of persons clothed with authority to act but exercising such authority illegally. McKenna v. N.J. Highway Authority, 19 N.J. 270, 275 (1955). It is a common law mode of review to correct errors of law apparent on the face of the record or proceedings of an inferior judicial or quasi-judicial tribunal. Baldwin Const. Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 345 (1954).
*86 Improper acts of municipal officers and boards can be reviewed by certiorari. P. & J. Auto Body v. Miller, 72 N.J. Super. 207, 212 (App. Div. 1962). However, the exercise of discretionary authority will not be disturbed unless palpably abused, in that the action taken is arbitrary. See Dubin v. Wich, 120 N.J.L. 469, 471 (Sup. Ct. 1938).
Plaintiff has alleged only that not all seven suggested categories of expertise are represented on the Industrial Commission. Plaintiff has not suggested that the successive mayors who made these appointments had any suitable alternatives to the people appointed, or that citizens representative of the missing categories were available for service on the commission. Plaintiff complains that agricultural interests are over-represented, but it is noted that so long as Howell Township remains primarily rural, people with agricultural expertise will continue to be most readily available for and involved in community service.
In sum, plaintiff has not shown that Mayor Barnes or, for that matter, his predecessors have done anything other than to carry out their statutory mandate in appointing Commission members who have had "experience in industry or commerce," are "conversant with industrial needs and facilities of the Township," are "of known devotion to public service," and represent the suggested categories of expertise where possible. No abuse of discretion has been shown.
The complaint will be dismissed.