170 N.J. Super. 251 (1979)
406 A.2d 218
ALFRED TRENKAMP AND DORIS TRENKAMP, HIS WIFE, ET AL., PLAINTIFFS,
v.
TOWNSHIP OF BURLINGTON, ALBERT HEINOLD, BUILDING INSPECTOR, TOWNSHIP OF BURLINGTON, VARRO G. BUZZI AND REBECCA LOU BUZZI, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 31, 1979.
*257 Mr. William L. Lundgren, III, for plaintiffs (Messrs. Farrell, Eynon & Lundgren, attorneys).
Mr. Frederick W. Hardt for defendants Township of Burlington and Albert Heinold, Building Inspector (Messrs. Sever, Hardt & Main, attorneys).
Mr. Jeffrey N. Goldstein for defendants Varro G. Buzzi and Rebecca Lou Buzzi (Messrs. Smith, Sand and Goldstein, attorneys).
HAINES, J.S.C.
A building permit was issued to defendants Buzzi on July 2, 1977 for the construction of a building described in the application as "Butler farmstead building, 36 ft. X 50 ft." The application indicated that the structure was being erected to house a workshop and to store antique cars, parts, garden tools and mowers. Actual construction of the building did not begin until August 17, 1977. By August 23 sidewalls, side supports and roof beams were in place; by August 27 the roof and walls were covered, and by August 31 the exterior had been completed. A certificate of occupancy for the building was issued on September 3. Various photographs introduced into evidence portray the structure as a large metal building located at the rear of the Buzzi lot.
*258 At the time the permit was issued the pertinent part of the township's zoning ordinance read as follows:
16:3-2(21) Garage, Private. A building or space accessory to a residence which provides for the storage of motor vehicles and in which no occupation, business or service for profit is carried on.
* * * * * * * *
19:6-1(2) Permitted Accessory Building and Structures.
(a) Private garages and car ports.
* * * * * * * *
(e) Storage buildings of 200 square feet or less in area.
Although N.J.S.A. 40:55D-72 permits "any interested party affected by any decision of an administrative officer of the municipality based on or made in the enforcement of the zoning ordinance" to take an appeal to the board of adjustment "within 65 days," plaintiffs did not avail themselves of this remedy. Instead, they filed their complaint in the Superior Court on November 2, 1977.
The complaint sets forth four theories of relief. First, plaintiffs assert an action in lieu of prerogative writs against the township building inspector, contending that he issued the permit in violation of the zoning ordinance. They demand a judgment compelling him to revoke the permit and enforce the ordinance. Second, plaintiffs assert an action in lieu of prerogative writs against the township seeking to have it compelled to secure the Buzzi's compliance with its zoning ordinance. Both of these actions implicate two of the four former great writs, namely the writs of certiorari and mandamus. As is explained in McKenna v. N.J. Highway Auth., 19 N.J. 270, 274-76 (1955), it is through the writ of certiorari that matters are brought before the court for review, while it is through the issuance of a writ of mandamus that relief is afforded to a litigant. Third, plaintiffs seek an injunction requiring the Buzzis to remove the structure because it violates the zoning ordinance. Fourth, plaintiffs demand an injunction requiring the Buzzis to remove the structure because it violates a deed restriction. The Buzzis, *259 in turn, seek damages from the township and its building inspector in the event plaintiffs are successful.
The case is presently before the court on motions for summary judgment based upon limited testimony and a stipulated factual statement. The facts upon which this opinion relies are not in dispute.

A. The 45-Day Rule

R. 4:69-6(a) requires that an action in lieu of prerogative writs be commenced not later than "45 days after the accrual of the right to review, hearing or relief claimed." Consequently, the threshold issue with regard to plaintiff's prerogative writ claims is whether they were prosecuted within the allotted time.
There was (and is) no statute requiring a public announcement in connection with applications for or issuance of building permits. Compare N.J.S.A. 40:55D-12. Consequently, plaintiffs had no constructive notice that a permit had been issued to defendants and, as stipulated, did not have actual notice until 46 days later when building commenced. Neither the filing of building plans with the office of the building inspector nor the public record concerning the issuance of the building permit constituted notice to anyone who did not actually see these records. The law does not saddle the public with an obligation requiring the constant scrutiny of voluminous official documents of the kind involved here in order to protect individual rights. See Farmingdale Realty Co. v. Farmingdale, 55 N.J. 103, 112 (1969). The unfairness in requiring a plaintiff to bring suit within 45 days from the date a building permit is issued, when he was ignorant of any reason to do so and without notice of any fact which would require that a diligent inquiry be undertaken, is obvious.
Nevertheless, a prerogative writ was dismissed under similar circumstances in Zimmerman v. Cherivtch, 5 N.J. Super. 590 (Law Div. 1949). In that case a prerogative writ was filed on *260 June 30, 1949 to oust Cherivtch from the office of city commissioner, to which he had been elected on May 10, 1949. Plaintiff, one of the defeated candidates, alleged that Cherivtch had previously been convicted of a crime that rendered him ineligible for public office. In 1949 the time within which a prerogative writ could be filed was fixed by statute as 30 days.
Anticipating a problem with this time limitation, plaintiff alleged in his complaint that he did not know, and in the exercise of due diligence could not have known, that Cherivtch had been convicted of a crime that rendered him ineligible for office until June 17, 1949. On that date plaintiff read a newspaper report that defendant had admitted the conviction in a federal district court on the previous day. Further compounding plaintiff's problem was the fact that defendant had been convicted under the name of Samuel Cherivtch but was presently known as Simon M. Cherivtch. Consequently, plaintiff argued that his right to relief could not have accrued until he became aware of the conviction.
In response, the court stated that as a general rule "mere ignorance of the existence of a cause of action or of the facts which constitute a cause of action will not prevent the running of a statute of limitations or postpone the commencement of the period of limitation." 5 N.J. Super. at 593. However, it did acknowledge that when a cause of action has been fraudulently concealed or when the cause of action itself is one in which the plaintiff was an innocent victim of a fraudulent scheme, the limitations period does not begin to run until the plaintiff becomes aware of the wrong or of facts that should place him on alert. The court held that the record failed to disclose facts supporting either exception to the general rule and dismissed the complaint. Curiously, in view of its prior statement of the general rule, the court prefaced its conclusion with the comment that plaintiff's allegations of ignorance were "not supported by any proofs in the record." 5 N.J. Super. at 594.
*261 Criticism of Zimmerman was not long in coming. In Marini v. Wanaque, 37 N.J. Super. 32 (App.Div. 1955), an action in lieu of prerogative writs had been brought against the borough's building inspector. It alleged the wrongful issuance of a building permit and a certificate of occupancy. The trial judge dismissed the cause for several reasons, one of which was that the action had not been commenced within the 30-day limitation period required by the rule then in force regarding prerogative writ actions. Plaintiff claimed that he was unaware of the issuance of the permit until a date less than 30 days before he started suit. The Appellate Division disagreed, but discussed the problem of knowledge in reaching its conclusion.
Judge Conford started his analysis with the premise that an illegally issued building permit constituted a wrong for which a remedy could immediately be sought by commencing an action in lieu of prerogative writs. Therefore, unless plaintiff could avoid the general rule that a cause of action accrues when the facts that entitle one person to sue another come into existence, his complaint was barred by the 30-day limitation rule. To avoid this consequence, plaintiff argued that the limitations period should not commence to run until he knew or was chargeable with having known that the building permit was issued. After a discussion of Zimmerman this argument was rejected. The court said:
It is readily perceivable that strict application of the rule of the cited case could well work an unwarranted hardship in the classes of cases where the applicant for judicial relief was not the party directly involved in the municipal proceeding under attack and consequently neither knows of the illegal action taken, until after lapse of the limitation period, nor is so situated as to be on reasonable notice thereof. The facts of the present case do not require a determination as to whether the rule stated in the Zimmerman case should be held applicable in such a situation. It clearly appears here that plaintiff knew of the issuance of the building permit and what was being done under its authority well in excess of 30 days prior to his institution of the present action. R.R. 4:88-15(a) bars him under any reasonable concept of its proper interpretation. [37 N.J. Super. at 39.]
*262 Other cases have touched upon the problem. Olsen v. Fair Haven, 64 N.J. Super. 90 (App.Div. 1960), involved an action in lieu of prerogative writs commenced to challenge the validity of a building permit, issued on October 20, 1958. It was alleged either to have been void at the time of its issuance or to have been rendered void by a subsequent revision of the zoning ordinance, adopted on May 25, 1959. After construction began on July 20, 1959, two separate prerogative writ actions were filed. The trial judge consolidated the cases and dismissed both because, among other things, they were not filed within the 45-day limitations period. An appeal was taken by plaintiffs in one of these suits.
The Appellate Division affirmed the dismissal on the limitations question as to the original issuance of the building permit. In its opinion the 45-day limitations period commenced to run on the date that the permit was issued. Mentioning Marini's suggestion that justifiable ignorance might toll the running of the limitations period, the court went on to point out that Marini had been decided before the adoption of what is now paragraph (c) of R. 4:69-6. In pertinent part, this paragraph provides: "The court may enlarge the period of time provided in * * * this rule where it is manifest that the interest of justice so requires." The court implied that the proper procedure in such cases is to enlarge, rather than toll, the limitations period. Since plaintiffs had not explained the ten-month interval between the issuance of the permit and commencement of suit, no reason had been presented that would warrant enlarging the time period.
A different result was reached with regard to plaintiff's claim that the permit was void due to the revision of the zoning ordinance. Assuming that the construction authorized by the permit violated this ordinance, the court held that plaintiffs would have been justified in presuming that defendant would not make use of the permit. The court continued: "Therefore it was only when plaintiffs knew or should have known that these *263 defendants were about to commence construction in spite of the 1959 ordinance that they were obliged to take action." 64 N.J. Super. at 97. Since the record did not disclose that these plaintiffs knew or should have known of the construction prior to its actual commencement on July 20, the filing of the complaint on August 25 was within time. Accord, Sautto v. Edenboro Apartments, Inc., 69 N.J. Super. 420, 435 (App.Div. 1961); Band's Refuse Removal, Inc. v. Fairlawn Borough, 62 N.J. Super. 522, 540 (App.Div. 1960), mod., 64 N.J. Super. 1 (App.Div. 1959), certif. den. 33 N.J. 387 (1960); Schultze v. Wilson, 54 N.J. Super. 309, 322 (App.Div.) certif. den. 29 N.J. 511 (1959).
This latter holding is difficult to square with the general definition of when a cause of action comes into existence. Under that definition plaintiffs' cause of action accrued as soon as defendants determined that they would proceed with the construction despite the passage of the revised ordinance. The court's focus on plaintiffs' awareness of this decision as the basis for deciding when the cause of action accrued appears to contradict its earlier analysis concerning the timeliness of the challenge to the original issuance of the building permit.
In Kohler v. Barnes, 123 N.J. Super. 69 (Law Div. 1973), a prerogative writ action challenged the appointment of various individuals to an industrial commission as well as its overall composition. With one exception, all appointments to the commission had been made more than 45 days before the action was instituted. In considering the timeliness of the action, the judge reviewed the applicable law.
He began his review with a statement of the general rule which mirrors that set forth in Zimmerman: "Generally, a cause of action accrues when facts exist which entitle one party to maintain an action against another." 123 N.J. Super. at 79. Ignorance of such facts was said not to halt the running of the limitations period, except when either the facts had been fraudulently concealed or could not have been discovered through the exercise of due diligence. It was pointed out that Schack v. *264 Trimble, 28 N.J. 40, 48 (1958), had indicated that paragraph (c) of R. 4:69-6 "was intended to restate in the form of a generalized standard decisional exceptions which had been engrafted upon the former limitation rules." 123 N.J. Super. at 80. These exceptions are usually deemed to arise in cases that involve substantial and novel constitutional questions, informal decisions of administrative officials that fail to adequately crystallize disputes or important public interests requiring adjudication. Since plaintiff's claim did not fall within any of these categories, the complaint against the individuals appointed more than 45 days before commencement of the action was dismissed.
This survey of the case law demonstrates a certain amount of confusion surrounding the problem of knowledge. This confusion is generated because two questions have not yet been answered explicitly by our courts. First, should justifiable ignorance of the facts giving rise to a cause of action mitigate in some fashion the operation of the 45-day limitation period? And if so, secondly, what is the appropriate analytical method for implementing this decision?
The preponderance of the existing case law clearly favors some sort of exception in these situations. The precedential value of Zimmerman, the one case that opted for a strict application of the time limitation, is weakened by the court's finding that the facts before it would not have justified the exception in any event. It is further weakened by the fact that the court was faced with a problem of statutory construction. In Schack v. Trimble, supra 28 N.J. at 49, the Supreme Court stated that the time limitation rule was "aimed at those who slumber on their rights." This comment, made after Zimmerman was decided, supports an exception of some sort in these circumstances. In addition, some guidance can be obtained from an examination of the equitable "discovery rule," applied by the Supreme Court to permit the maintenance of damage actions otherwise barred by accrual statutes of limitations. See, e.g., Fernandi v. Strully, 35 N.J. 434 (1961); Lopez v. Swyer, 62 N.J. *265 267 (1973). As was pointed out in Lopez v. Swyer at 273-74, the discovery rule evolved "as a means of mitigating the often harsh and unjust results which flow from a rigid and automatic adherence to a strict rule of law." That sentiment is no less persuasive when dealing with a judicially adopted limitation rule. It follows that knowledge must be a consideration in applying the 45-day rule. At the same time, the Supreme Court's caution (at 274) that limitation rules cannot be ignored completely since "the principal consideration underlying their enactment is one of fairness to the defendant," must also inform the exception countenanced. Mere ignorance of a cause of action will not automatically lead to a waiver of the limitation rule. Instead, the court must balance the equities of the case in the manner indicated by Lopez and in no circumstance enlarge the time period on this ground beyond 45 days from the time at which plaintiff knew or should have known of the cause of action.
Although a decision to enlarge the time period might be implemented by holding that the cause of action "accrued" when knowledge obtained, the essentially equitable nature of this exception makes the enlargement provision of the rule the more attractive mechanism for implementation. Moreover, the Supreme Court has demonstrated a preference for having judicially created exceptions engrafted upon the rule through this provision. See Schack v. Trimble, supra 28 N.J. at 46-50. Alongi v. Schatzman, 57 N.J. 564 (1971), illustrates this preference in a context that also provides support for the conclusion that an enlargement of the time period may be called for when an individual is justifiably ignorant of the facts that constitute his cause of action.
In Alongi defendant Shaluha had obtained his party's nomination for the post of municipal tax assessor in a primary election held on June 3, 1970. Prior to the election plaintiff had questioned him about his qualifications and he had falsely claimed to be a college graduate. After the primary election the borough *266 clerk certified Shaluha's candidacy in what the court termed "flagrant violation" of the procedure required by the relevant statute. Plaintiff, although still unaware of the ineligibility, advised the clerk of his procedural error, but to no avail. Undaunted, plaintiff took the matter up with the county board of taxation, which responded by informing the clerk about his duties. On September 29, 1970, in answer to plaintiff's inquiry, the State Division of Taxation provided the information that established defendant's ineligibility. Plaintiff's subsequent objections to the county clerk and county tax board were denied. On October 7, 1970 plaintiff instituted suit against the county clerk, the borough clerk and the candidate.
The trial judge characterized the proceeding as one in lieu of prerogative writs and held that plaintiff's diligent efforts to verify Shaluha's eligibility, in combination with Shaluha's misrepresentation about his college education, tolled the limitation period until plaintiff discovered the truth. Consequently, the suit was timely. The Supreme Court affirmed but held that the misrepresentation and persistent efforts by plaintiff provided ample justification for enlarging, as opposed to tolling, the limitation period in the interest of justice.
Here, plaintiff's cause of action accrued on July 2, 1977, the date the permit was issued. Actual knowledge, or reason to know of its issuance, was had on August 17, 1977 when construction began. Plaintiffs did not file their complaint until November 2, 1977, well beyond 45 days from that date. Consequently, the prerogative writ aspect of the suit is barred unless the interaction of the 65-day statutory period for appeals to boards of adjustment with the limitation rule provides a different reason for extending the time for suit.

B. The 65 Day Rule

N.J.S.A. 40:55D-72 provides:
Appeals to the board of adjustment may be taken by any interested party affected by any decision of an administrative officer of the municipality based *267 on or made in the enforcement of the zoning ordinance or official map. Such appeal shall be taken within 65 days by filing a notice of appeal with the officer from whom the appeal is taken specifying the grounds of such appeal. The officer from whom the appeal is taken shall immediately transmit to the board all the papers constituting the record upon which the action appealed from was taken.
R. 4:69-6(a) may not bar an action commenced beyond 45 days if the complaint was filed within this 65-day period. The issue involved here is the interpretation of a zoning ordinance. Under the reasoning of Supermarkets Oil v. Zollinger, 126 N.J. Super. 505 (App.Div. 1974), such interpretation involves a pure question of law, which may be determined in a timely prerogative writ proceeding without insisting upon compliance with the exhaustion of administrative remedies doctrine because to do so would cause useless delay. See Nolan v. Fitzpatrick, 9 N.J. 477, 486-87 (1952); Rolleri v. Lordi, 146 N.J. Super. 297, 302 (App.Div. 1977); Taureck v. Jersey City, 149 N.J. Super. 503, 509 (Law Div. 1977). Similarly, to dismiss this untimely prerogative writ action while plaintiff is still able to perfect an administrative appeal would only result in the commencement of the same action before an administrative tribunal. Therefore, the salutory purpose that underlies the waiver of the exhaustion doctrine would call for the relaxation of the 45-day rule as well "in the interest of justice," and it becomes necessary to consider the 65-day statute to determine whether plaintiffs have complied with its time requirements.
The statute requires that an appeal to the board of adjustment for review of an administrative officer's determination with regard to an application for a building permit be taken within 65 days. The statute is silent, however, as to the event that triggers commencement of this time period. The Legislature could have made its intention very clear by providing, for example, that an appeal "shall be taken within 65 days" of the date of the decision. There are other choices as well. The 65-day period could commence running from the date the administrative decision was implemented by the issuance of the permit, *268 or from the date the permit was filed, or from the date building actually commenced, or from the date the permit was posted or the decision advertised, assuming the incorporation of posting or advertising requirements in the statute. The Legislature's failure to explicitly state its choice makes the question of when the period begins to run one of statutory interpretation.
Under the statute all "interested parties" are afforded a right of appeal. N.J.S.A. 40:55D-4 defines an "interested party" in part as a person "whose rights to use, acquire, or enjoy property is or may be affected by any action taken under this act." In this case the Buzzis waited 46 days before taking any action pursuant to their permit; they might just as easily have waited 66 days. Nothing in the statute precludes this course of conduct which, because of the absence of any statutory notification or publication requirement in connection with the issuance of building permits, could result in the passage of more than 65 days by deliberate delay or otherwise, before any interested person other than the recipient of a permit gains knowledge of its issuance. Consequently, a proper regard for the interests of such persons mandates that the time for appeal begins to run from the date an interested person knew or should have known of the permit's issuance.
At the present time the person to whom a building permit is issued does not know when it is safe from attack. Under the interpretation adopted here he may protect his position by giving reasonable notice of his undertaking. He need not commence construction, as the Buzzis did, to give such notice. That procedure risks too much. Alternatives suggest themselves: appropriate posting of the permit or adequate advertising may provide the knowledge to interested persons which requires them to act within 65 days. Those techniques can be assessed *269 judicially only when they are part of a record presented to a court for decision.[1]
Our courts in construing "accrual" statutes of limitations have recognized the harshness of a rule which denies relief to a litigant who slept upon his rights only because he had no reason to know he had them. Lopez v. Swyer, supra; see Marini v. Wanaque, supra 37 N.J. Super. at 39. As a consequence, the discovery rule was adopted as a reasonable construction of these enactments. The 65-day statute is not in the category of statutes which establish "accrual" periods of limitation, as to which the discovery rule has been applied, or in the category of those which fix a named objective event as the beginning of a limitation period, as to which the discovery rule is not applied. See Presslaff v. Robins, 168 N.J. Super. 543 (App.Div. 1979). Furthermore, the discovery rule is generally applied to controversies presented to courts for decision in the first instance, e.g., a suit to recover damages arising out of a claim of medical malpractice under N.J.S.A. 2A:14-2. In applying this rule the court exercises the type of discretion normally entrusted to the judiciary; therefore, it is appropriate to presume that the Legislature intended that the equities of the particular case would be weighed and balanced when it enacted the statute. It is doubtful that the Legislature intended boards of adjustment to exercise such discretion. Cf. Branagan v. Schettino, 100 N.J. Super. 580, 589 (App.Div. 1968). The statute not only is silent as to when the 65-day period commences, but also, unlike the 45-day rule, as to whether the time restriction may be enlarged. Consequently, *270 although all of the reasons that caused the discovery rule to evolve are present, this court's construction of N.J.S.A. 40:55D-72 does not call for any exercise of discretion on the part of boards of adjustment. Their function is to make the factual determination as to when an appellant knew or should have known of a building permit's issuance and then calculate the time elapsed before the appeal was taken.
Plaintiffs had constructive knowledge of the decision to issue the building permit when they observed the erection of the building on August 17, 1977, more than 65 days before they filed their complaint. As a result, the 45-day rule cannot be enlarged to accommodate the 65-day statute. Plaintiffs' suit comes too late.

C. Estoppel

The discussion, to this point, has been concerned with plaintiffs' right to seek judicial and, insofar as the court's interpretation of N.J.S.A. 40:55D-72 is binding on boards of adjustment, administrative review. Even when this right is conceded, however, other legal doctrines not directly related to the merits of plaintiffs' allegations may prohibit relief. For example, an appeal from a municipal official's decision to issue a permit automatically preserves the status quo except in extraordinary situations. See N.J.S.A. 40:55D-75. Should an individual unreasonably delay in perfecting that appeal, he may find himself faced with an insurmountable laches or estoppel defense. Compare Branagan v. Schettino, 100 N.J. Super. 580, 589 (App.Div. 1968). Similarly, the conduct of the municipality can give rise to an estoppel defense that will preclude it from revoking an erroneously issued building permit. Since, as will be seen, defendants Buzzi could establish such a defense, the alternative basis for dismissing the actions in lieu of prerogative writs which seek to force the revocation of the permit by the *271 inspector and municipality, is that they can result in no effective relief.[2]
The fountainhead of modern discussion concerning when a municipality is estopped from revoking a building permit is Chief Justice (then Judge) Weintraub's opinion in Jantausch v. Verona, 41 N.J. Super. 89 (Law Div. 1956), aff'd 24 N.J. 326 (1957). Jantausch asserts that the applicability of the estoppel defense depends upon the circumstances surrounding the issuance of the permit. For the purpose of evaluating estoppel contentions Jantausch segregates all permits into three distinct categories. At the one extreme, a permit validly issued cannot be revoked after reliance, absent fraud. At the other extreme, a permit invalidly issued without any "semblance of compliance with or authorization in the ordinance," id. at 94, not only can be revoked after reliance, but also collaterally attacked after the period for direct review has expired. The middle ground is occupied by those permits issued in good faith but based upon an erroneous, though arguably correct, interpretation of the zoning ordinance. The permit at issue in this case is of the last type.
Although it was not clear at the time Jantausch was decided whether a municipality would be estopped from revoking a permit within this latter category, see Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589, 606 (App.Div. 1958), aff'd 29 N.J. 468 (1959); Esso Standard Oil Co. v. North Bergen Tp., 50 N.J. Super. 90, 95-96 (App.Div. 1958), it is clear from subsequent cases that the municipality is estopped when there has been reliance, see East Hanover Tp. v. Cuva, 156 N.J. Super. 159, 165-66 (App.Div. 1978); Howland v. Freehold, *272 143 N.J. Super. 484 (App.Div.) certif. den., 72 N.J. 466 (1976); Hill v. Eatontown Bd. of Adj., 122 N.J. Super. 156 (App.Div. 1972). In light of the foregoing, the township and its building inspector would be estopped from revoking the Buzzi's permit, a clear defense to the enforcement of any order of revocation. That defense has been raised here. Consequently, the court will not order the building inspector or the municipality to undertake this useless task. See Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955). For the same reason, the municipality would be estopped from commencing an action for a mandatory injunction to compel removal of the structure that allegedly violates the zoning ordinance. See Alpine Borough Mayor, &c. v. Brewster, 7 N.J. 42 (1952).
In passing, the relationship between N.J.S.A. 40:55D-72 and the concept under discussion should be noted. The 65-day period for taking an appeal to the board of adjustment from a building inspector's decision to issue a permit creates a limited exception to these estoppel rules. A successful appeal results in the revocation of the permit, a revocation which the municipality and its building inspector would be estopped from undertaking. Hence, the municipality, at the insistence of a third party, may be able to accomplish a result that is otherwise foreclosed to it as a party to the original issuance of the permit. See Jantausch v. Verona, supra, 41 N.J. Super. at 95. In this respect the board of adjustment occupies the same position as a court presented with a timely prerogative writ challenge to the issuance of a building permit. Since no appeal was taken within the 65-day period, this "exception" plays no role in this case.

D. Injunctive Relief

The third theory advanced by plaintiffs in support of their request for an injunction is the one first sanctioned by the Supreme Court in Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953). In that case defendant was the owner of six lots. Five *273 of these lots were located within an area zoned for business; the remaining lot was entirely within a residential zone. Plaintiff lived within the latter zone and occupied premises adjacent to defendant's residential lot. After obtaining a building permit on June 25, 1950 for erection of a supermarket building on those lots within the business zone, defendant commenced construction which was completed by April 1951. Shortly thereafter a certificate of occupancy for the commercial use was issued. Defendant then paved its unoccupied land, including the sixth residential lot for parking purposes. Plaintiff responded by instituting a suit that sought, among other things, to enjoin this parking use.
In reply to defendant's argument that plaintiff lacked standing to seek an injunction prohibiting this use of the sixth lot because of the zoning ordinance violation, the court explained:
The plaintiff is not acting simply as a citizen or taxpayer of the community in his quest to prevent further violation of the zoning ordinance. He is a property owner whose home adjoins the premises where the violation is occurring and he alleges special damages in that he and his family are being discommoded and his property depreciated. His interest is distinct from and greater than that of the community as a whole and we perceive no reason for denying him fair opportunity to vindicate and protect that interest; we consider that such denial would not only operate unjustly as to him but would also retard the public interest. Cf. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250 (1951).
In Mayor, &c., of Alpine Borough v. Brewster, 7 N.J. 42, 52 (1951), this court recently recognized the general rule that an individual may obtain an equitable restraint against violation of a zoning ordinance where he has "sustained special damage over and above the public injury". This rule is well established in other jurisdictions (129 A.L.R. 885 (1940)) and has properly been applied in our Chancery Division under circumstances comparable to those presented in the instant matter. See Frizen v. Poppy, 17 N.J. Super., 390, 393 (Ch.Div. 1952); Yanow v. Seven Oaks Park, Inc., 15 N.J. Super. 73 (Ch.Div. 1951). See also Stokes v. Jenkins, 107 N.J. Eq. 318 (Ch. 1930). We are satisfied that the plaintiff's showing was sufficient to withstand the motion of the private defendants to dismiss for lack of standing to enjoin.
Defendants in Garrou argued in the alternative that the certificate of occupancy had become irrevocable once the time *274 for administrative review had expired and therefore authorized their use of the sixth lot for parking. Initially, the court pointed out that the certificate only permitted the use of the building as a store, not the use of any property for parking. But even if the certificate had allowed the lot to be used for parking, in clear contravention of the ordinance, the court went on to say that "the certificate ... would not have been irrevocable but, on the contrary, would have been utterly void and subject to collateral attack by the plaintiff and the municipal officials." 11 N.J. at 306.
Since this type of action seeks enforcement of a zoning ordinance, it is not, like a prerogative writ suit, necessarily premised on an objection to governmental action. The proceeding can be commenced regardless of whether a building permit authorized construction or a certificate of occupancy authorized occupation. When neither document has been obtained, the injunctive as opposed to the prerogative writ nature of this type of suit is apparent. The fact that these papers were issued does not alter the injunctive complexion of the case. This analysis applies here. Consequently, this aspect of the Trenkamp's complaint cannot be dismissed as were the prerogative writ actions for failure to comply with the time limitation proviso. See Garrou v. Teaneck Tryon Co., supra; Auciello v. Stauffer, 58 N.J. Super. 522, 528 (App.Div. 1959); Weber v. Pieretti, 72 N.J. Super. 184, 191 (Law Div.), aff'd in part 77 N.J. Super. 423 (App.Div. 1962). The issue before the court is not whether a particular paper should be revoked, but rather what legal rights stem from the paper's issuance.
From Garrou it can be deduced that an utterly void municipal act is of no legal significance. But what of municipal action that is neither valid nor void, but within the intermediate category established in Jantausch? Can that which was approved *275 by such action also be undone through the mechanism of a Garrou suit? The answer to this question is that although a Garrou suit cannot be dismissed for failure to comply with the time limitation proviso applicable to actions in lieu of prerogative writs, the action is doomed to failure for the very same reason when only voidable or irregular municipal action is at issue. The logic underlying this response will become clear after a discussion of Thornton v. Ridgewood, 17 N.J. 499 (1955), and its implications.
In Ridgewood the village purchased a property within the municipality for public use. Plaintiff sought to set aside this purchase because it allegedly exceeded the powers of the municipality and was therefore void. Defendant, in part, contended that the time limitation proviso of the prerogative writ rule required the dismissal of plaintiff's complaint. After reviewing the general principles concerning ultra vires municipal action, the court concluded that such a claim historically sounded in equity and was capable of being brought at any time. Hence, the prerogative writ limitation rule, which applied to actions cognizable at law, did not necessitate the dismissal of this aspect of plaintiff's case.
The avoidance of time limitations, however, does not spell success. For reasons entirely historic in nature courts of equity have refused to intercede on the behalf of petitioners who challenge only irregular or illegal as opposed to ultra vires municipal activity. See Jersey City v. Lembeck, 31 N.J. Eq. 255 (E.&A. 1879); Mackie v. Cain, 92 N.J. Eq. 631, 633-34 (E.&A. 1921); Sutton v. Maurice River Tp., 93 N.J. Eq. 484 (E.&A. 1922); Williams v. Audubon, 96 N.J. Eq. 459 (Ch. 1924). Nor does the circumstance that direct review is no longer available serve to vest equity with jurisdiction. See Goodwin v. Millville, 75 N.J. Eq. 270 (E.&A. 1908); Mitchell v. Pychlau, 105 N.J. Eq. 524, 531 (E.&A. 1930). Therefore, when opportunity to pursue a prerogative writ proceeding has been lost by delay and the *276 equity jurisdiction of the court cannot be invoked, possession of an irregularly issued permit is tantamount to an indefeasible property right.
Most recently, Marini v. Wanaque, previously discussed in connection with the extension of the prerogative writ limitation rule, reached this conclusion. Marini concerned a building permit and certificate of occupancy allegedly issued in violation of a zoning ordinance. The Appellate Division, having found that plaintiff had commenced his action in lieu of prerogative writs too late, dismissed the complaint. Before doing so, however, it considered an additional argument that had been put forth.
Plaintiff claimed that the limitation provision did not apply because the action of the building inspector had been "utterly void." Rejecting this assertion, the court found (at 37 N.J. Super. at 40) that at most the building inspector's action "was a mistaken or irregular exercise of a ministerial function," which "presented a typical case for review by action in lieu of prerogative writ", id. Garrou, upon which plaintiff relied, was distinguished on the basis that it did not involve the prerogative writ rule. The court's subsequent discussion of Thornton demonstrates its appreciation of the difference between "direct" attacks on "void" or "voidable" municipal acts cognizable at law by way of timely actions in lieu of prerogative writs and "collateral" attacks like that in Garrou on "utterly void" municipal acts, cognizable in equity even after the opportunity for direct review has passed. It concluded by questioning the advisability of drawing such distinctions and by finding that in any event "the salutary policy of quieting rights vested by limitations," id. at 41, required that direct review of all permits be sought within the allotted time or be foreclosed forever. Consequently, plaintiff's attempt to circumvent the limitations proviso failed, while defendant's structure survived.
The same result, but for different reasons, was arrived at in Schultze v. Wilson, 54 N.J. Super. 309 (App.Div. 1959), certif. den. 29 N.J. 511 (1959). In 1954 Wilson obtained a building permit *277 for the construction of a restaurant. The permit was issued at a time when the municipality had a building code but no zoning ordinance. This code required that each applicant for a permit file plans and specifications. Although Wilson neglected to file either, the testimony at trial indicated that this requirement was rarely enforced by the municipality. Construction was started, then interrupted for more than two years while Wilson sought to secure riparian rights without which building was impossible. After unsuccessfully opposing Wilson's application for these rights, Schultze commenced this action, which contended in part that the permit should be revoked because of Wilson's omission of the plans and specifications. Not surprisingly, Schultze was the owner of a nearby restaurant.
The Appellate Division concluded that Schultze lacked the requisite standing to bring the action, and as one of three alternative holdings also concluded that the action was barred by the limitation proviso of the prerogative writ rule. Initially, the court set forth as a general principle that an "utterly void" building permit is subject to "direct" as well as "collateral" attack, while an "irregular" building permit is subject only to "direct" attack. Next, it held that plaintiff's action was a direct attack on the permit because of the language used in the amended complaint and pretrial order. Since approximately two years had passed between the time Schultze became aware of the construction and the institution of this suit, the direct attack was barred by the limitation proviso of the prerogative writ rule.
In addition, the court held that the permit could not be attacked collaterally because the failure to file plans and specifications rendered it "merely `irregular' and not `utterly void.'" Compare Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589, 598-599, 606-607 (App.Div. 1958), aff'd 29 N.J. 468 (1959). Unlike Marini, the justification advanced by Schultze for this difference in treatment was that "substantial reliance will protect the permittee if the permit be irregular but *278 not if it be utterly void." Schultze v. Wilson, supra 54 N.J. Super. at 323. A collateral attack on an irregularly issued permit fails, not due to any consideration of the respective spheres of law and equity but because once substantially relied upon the permit ripens into a "vested right."
According to the court, this result is called for by Jantausch. The relevant part of Jantausch, however, is entirely concerned with the circumstances under which the defense of estoppel will preclude municipalities from revoking building permits. The opinion at no time speaks to collateral attacks launched by nearby property owners under the authority of Garrou. This is an important factor since estoppels typically preclude certain parties from obtaining relief because of their conduct, see Dobbs, Remedies, § 2.3 at 41-44 (1973), without necessarily barring the identical relief to any other entitled party. That a plaintiff in a Garrou suit is not to be considered as standing in the shoes of the municipality was made clear by the Supreme Court in that case when it pointed out (at 11 N.J. at 300) that such a person's "interest is distinct from and greater than that of the community as a whole."
Seemingly, Schultze would extend the Jantausch principle to estop not only municipalities but also third persons whenever there has been reliance on an irregularly issued permit. This would foreclose direct review of such issuances by third persons even though they commenced action within the time required for prerogative writ suits. Schultze avoids this result by limiting its holding to collateral attacks by third persons. Consequently, direct review remains available in these circumstances and a permittee acquires a "vested right" only after the time for such review has passed. The result, though not the reasoning, therefore squares with Marini.
Here, the zoning ordinance permitted the construction of a garage on the Buzzi property in language which the building inspector could have interpreted as authorizing the structure in question. His issuance of the permit was at best irregular. It *279 was in reliance on this permit that the Buzzis erected their garage. Consequently, plaintiffs' Garrou action must fail either because the court lacks the equitable jurisdiction necessary to afford relief, Marini v. Wanaque, supra, or because the Buzzis have a vested property right, Schultze v. Wilson, supra.

E. The Deed Restriction

The remaining contention of plaintiffs is based upon the terms of the deed by which the Buzzis obtained title to the property. This conveyance was made subject to the following restriction:
No structure, other than a residence and customary appurtenant buildings and structures for one family occupancy and use, shall be erected on the lands hereby conveyed, and, before erection of any such structure, the parties of the second part or their successors in interest shall obtain written approval of the type, design and construction thereof and the location of same on said lands from the parties of the first part or the survivor of them or, if both parties of the first part be then deceased, from the executors or administrators of the Estate of said Henry H. Albertson; provided, however, that no such approval shall be required after expiration of 15 years from the death of the survivor of the parties of the first part.
The portion of this restrictive covenant that remains operative and relevant to the present controversy is that which provides: "No structure, other than * * * customary appurtenant buildings and structures for one family * * * use, shall be erected on lands hereby conveyed."
The principles applicable when a court is confronted with a request for relief premised upon a restrictive covenant are well established. Bruno v. Hanna, 63 N.J. Super. 282 (App.Div. 1960), quoted with approval in Berger v. State, 71 N.J. 206, 215 (1976), instructs:
Restrictions on the use to which land may be put are not favored in law because they impair alienability. They are always to be strictly construed, and *280 courts will not aid one person to restrict another in the use of his land unless the right to restrict is made manifest and clear in the restrictive covenant. [63 N.J. Super. at 285]
Similarly, Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J. Super. 111 (App.Div. 1961), states:
While restrictive covenants are to be construed realistically in the light of the circumstances under which they were created, [citation omitted], counter considerations, favoring the free transferability of land, have produced the rule that incursions on the use of property will not be enforced unless their meaning is clear and free from doubt, [citations omitted]. Thus, if the covenants or restrictions are vague or ambiguous, they should not be construed to impair the alienability of the subject property. [at 114-115]
Put more concisely, "in cases where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful, `to doubt is to deny.'" Fortesque v. Carroll, 76 N.J. Eq. 583, 586 (E.&A. 1910).
The covenant expressly allows more than one structure to be located on the property as long as each qualifies as a customary appurtenant building for one family use. There can be little argument that a structure for storage purposes is of a type that qualifies. Certainly, except in the most extreme of situations, that which is to be stored within can be of no consequence. Likewise, a building housing a workshop is not so uncommon as not to be encompassed by this phrase. It is at least doubtful that the circumstance of the Buzzis having decided to build one structure large enough for all their needs, rather than several smaller structures, serves to establish a violation of the covenant.
Obviously, the problem with this structure lies not in its anticipated use but in its size. Analogous in this respect is Sutcliffe v. Eisele, 62 N.J. Eq. 222 (Ch. 1901), in which the covenant at issue, with exceptions, prohibited the building of a house within 12 feet of one street line or within 15 feet of another. Excepted from this requirement were bay windows and piazzas. The object of the controversy was described (at 223) as a structure with "a semicircular front, two stories high, *281 having a radius of [eight] feet," which exceeded the distance restriction by eight feet. Coincidentally, the complaining party's house was identical in construction to that of defendant but of smaller dimensions; it transgressed the distance restriction by only slightly more than two feet.
In language that is equally applicable here the court said:
[Plaintiff] contends that his structure is strictly a bay window, and that his neighbor's is not. Differentiating them, however, only by their respective dimensions, he is unable to say when a structure of that kind ceases to be a bay window and becomes something else. He cannot suggest any rule by which the court can say to Mr. Lehman, "Thus far you may build and no further." * * * I am quite at a loss to decide, size alone being considered, when such a structure ceases to be a bay window and becomes something else. If it was the intention of the grantors to put any size limit upon either bay windows or piazzas, how easy it would have been to have done so in the deed. * * * The vagueness of the covenant is fatal to the complainant's case. As was said by Lord Westbury, in Law v. Innes, 10 Jur.(N.S.) 1037, "The first duty of the court, in granting an injunction of this kind is to lay down a clear and definite rule." But how can any rule be here laid down which will not interpolate into this covenant a restriction which it does not itself contain?
The covenant in the Buzzi deed does not restrict size. It cannot be the source of any limitation in that respect.
In view of these conclusions, the complaint and crossclaim must be dismissed. No costs.
NOTES
[1] This would not be necessary if the Legislature amended the statute to provide for posting or publication. If it does so, it should consider shortening the 65-day limitation period substantially. A person obtaining a building permit should not have to wait 65 days before he knows it is secure from challenge. Under present law, it is reasonable to assume that most builders commence construction within 65 days from the time the permit is issued, thus risking substantial investments.
[2] The doctrine of estoppel caused dismissal of the mandamus actions against the within municipality and its inspector in response to a motion for summary judgment. It is reviewed here to amplify the opinion supporting that decision and to provide a complete analysis of the problems involved in resolving attacks on building permits.